**PETERSON MORTUARY, INC.,** Plaintiff,

v.

**Richard P. VINAL,** Defendant.

**Civ. No. 01714.**

United States District Court
D. Nebraska.

Feb. 4, 1965.

Eugene P. Welch, of Gross, Welch, Vinardi, Kauffman, Schatz & MacKenzie, Omaha, Neb., for plaintiff.

Howard N. Singer, Atty., Dept. of Justice, Washington, D. C., for defendant.

ROBINSON, Chief Judge.

This is an action instituted by the plaintiff Peterson Mortuary, Inc., a citizen and resident of the State of Nebraska against Richard P. Vinal, the District Director of Internal Revenue for the District of Nebraska for a refund of taxes paid. The United States of America has filed a supplemental complaint in intervention for the payment of additional excise taxes and interest arising from the same transactions and having questions of law and fact in common with the main case. This Court has jurisdiction under 28 U.S.C.A. § 1340.

The facts have been stipulated between the parties. On December 29, 1958, the taxpayer purchased a Chrysler automobile from Gamboni Motors, a car dealer in Nebraska City, Nebraska. The automobile was ordered by the dealer from Chrysler Corporation in Detroit, Michigan, with instructions to deliver it to the Memphis Coach Company [Memphis] at Memphis, Tennessee. The taxpayer had contracted with the coach company to make certain alterations to the automobile so that it might be used as an ambulance. The work was done and materials furnished by Memphis at a cost to the taxpayer of $1,870.25. The weight of the vehicle was increased by between 750 and 1000 pounds. Thereafter, an employee of the taxpayer took delivery and drove it to Omaha from Memphis. Since that time the vehicle has been used in the taxpayer's business as an ambulance.

On January 14, 1960, the taxpayer purchased another Chrysler automobile from the said dealer. However, this time an employee of the taxpayer took possession from the car dealer and drove the automobile to Memphis, Tennessee. Taxpayer had previously contracted with the coach company to supply labor and materials to convert the automobile into a hearse. This was done at a cost of $4,194.00 to the taxpayer, and the weight of the vehicle was increased by about 2000 pounds. The employee of the taxpayer then took delivery of the hearse from Memphis and drove it to Omaha where it has since been used in the taxpayer's business as a hearse.

Although more work was required on the hearse, both conversions required a substantial amount of rebuilding. The taxpayer had no control over any of the labor or materials furnished in this activity. The title to the automobile remained in the taxpayer at all times after the purchase thereof.

On July 30, 1962, taxpayer filed two Quarterly Excise Tax Returns with the

defendant, one for the first quarter of 1959, the other for the first quarter of 1960. Payment with the returns was made as follows:

|  | Quarter Ending March 31, 1959 | Quarter Ending March 31, 1960. |
|---|---|---|
| Manufacturer's Excise Tax | $177.03 | $399.40 |
| Interest | 34.52 | 53.92 |
| Penalty | 44.26 | 99.85 |
|  | $255.81 | $553.17 |

A refund claim has been made for these amounts, and no action was taken by the defendant thereon. Later the penalty referred to was abated.

On June 28, 1963, the Commissioner of Internal Revenue assessed additional excise taxes on the transactions in question of $367.79 plus interest of $66.58. From this amount has been subtracted the amount of the penalty abatement, which was never returned to the taxpayer, leaving a balance of $290.26. This is the amount prayed for in the intervening complaint by the United States of America.

The statutes involved are from the Internal Revenue Code of 1954 [26 U.S. C.] and read in pertinent part as follows:

"§ 4061. Imposition of Tax

"[a] Automobiles.—There is hereby imposed upon the following articles [including in each case parts or accessories thereof] sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

\* \* \* \* \* \*

"[2] Articles taxable at 10 percent except that on and after July 1, 1965, the rate shall be 7 percent—

"Automobile chassis and bodies other than those taxable under paragraph [1]."

"Chassis and bodies for trailers and semitrailers [other than house trailers] suitable for use in connection with passenger automobiles.

"A sale of an automobile, trailer, or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body."

\* \* \* \* \* \*

[26 U.S.C.1958 ed., Sec. 4061]

"§ 4218 [as amended by Sec. 118, Excise Technical Changes Act of 1958, P.L. 85–859, 72 Stat. 1275, and Sec. 2 Act of April 8, 1960, P.L. 86–418, 74 Stat. 38] Use By Manufacturer Or Importer Considered Sale.

"[a] General Rule.—If any person manufactures, produces, or imports an article (other than an article specified in subsection (b), (c), or (d) and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable under this chapter to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him.

\* \* \* \* \* \*

"[e] Computation of Tax.—Except as provided in section 4223(b), in any case in which a person is made liable for tax by the preceding provisions of this section, the tax (if based on the price for which the article is sold) shall be computed on the price at which such or similar articles are sold, in the ordinary course of trade, by manufacturers, producers, or importers, thereof, as

determined by the Secretary or his delegate. (26 U.S.C. 1958 ed., Sec. 4218)"

There are basically three questions that are to be resolved in this case. The first is whether or not the conversion of these automobiles into, respectively, an ambulance and a hearse, is a further act of manufacture so as to place the activity performed within the meaning of the cited statutes. The second question is whether the taxpayer itself may be considered to be a manufacturer under the circumstances of this case. The third and, in a sense, subordinate question is whether or not the tax imposed, if imposed at all, should be computed on what would be considered the sales price of the ambulance and hearse or on the conversion cost alone. Each of these questions shall be separately resolved.

The first question to be considered, then, is whether the transformation of the automobiles into a hearse and an ambulance was an act of manufacture. We must agree with the Government that it is. There is no necessity that a "new and different" article result from the process undertaken. United States v. Armaturs Exchange, Inc., 116 F.2d 969 [C.A.9th., 1941]. The fact that the article was a vehicle before and remains a vehicle after the transformation is in no way determinative of the question. The automobiles were substantially changed by the conversion. They are no longer suited for the activity of carrying passengers for which they were originally made. Conversely, the automobiles were not suited for use as an ambulance and a hearse in the mortuary business before the change.

While it is true that generally speaking the finished product may come within the same broad category that the original product is in, this by no means can be the test used in applying this statute. The effectiveness of the statute would be impaired almost beyond recognition if this were the case. An ordinary cigarette lighter could be transformed into a fashionable table fixture under the theory espoused by the taxpayer, but no tax would be imposed.

It is interesting to note also that labor performed on what is already a taxable item may still be manufacturing. An article is being manufactured through all of the processes it takes to turn out the finished product, and the fact that one item complete in itself [in this case, the automobiles] and already taxable is used as a component part in no way changes the fact that manufacturing is being done. Magnesium Casting Co. v. United States, 323 F.2d 952 [1st Cir., 1963].

In any case, the ambulance and hearse are new and different articles in the eyes of this Court. It is eminently clear to us that there has been an act of manufacturing imposed in this instance.

The next issue to be approached is whether the taxpayer can be classified as a manufacturer. The Government relies basically on Treasury Regulations 46 [1940 ed.] § 316.4 in its contention:

"SEC. 316.4. WHO IS A MANUFACTURER.—[a] The term 'manufacturer' includes a person who produces a taxable article from scrap, salvage, or junk material, as well as from new or raw material, [1] by processing, manipulating, or changing the form of an article, or [2] by combining or assembling two or more articles.

"[b] Under certain circumstances, as where a person manufactures or produces a taxable article for a person who furnishes materials and retains title thereto, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer."

This regulation has been in existence in this form since before 1940, and the Internal Revenue Code and the pertinent sections have been re-enacted on at least one occasion since that time. The rule

is established that under such circumstances, Congress shall be deemed to have approved the regulation and in so doing to have given it the force of law. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 [1939]. It remains for us to see what application this regulation has in this case.

The Government contends that since the taxpayer supplied the automobiles and retained title thereto the operation falls squarely within the wording of the regulation. Both parties rely on the case of United States v. Gamble-Skogmo, 91 F.2d 372 [C.A. 8th, 1937] which was involved to some extent with the regulation in question here. After determining that the taxpayer in that case had merely extended credit to the manufacturer in the interest of obtaining an end result, the court made the following statement by way of dictum at page 376:

"If the court below had found that the taxpayer purchased the units from the Zerozone Corporation for its own account, and the cabinets from Puffer-Hubbard, and employed Puffer-Hubbard to assemble the complete refrigerators, the taxpayer would have fallen within the definition of a manufacturer or producer; * * *."

Applying that test to the instant case, if the taxpayer had supplied the automobile *and* purchased the materials from Memphis and also employed Memphis to convert the automobiles, it would be a manufacturer. This was not done here. The automobile was supplied, but all materials and labor were supplied by Memphis and the conversion was done entirely under the supervision of Memphis employees. Other than requesting an end result, Peterson Mortuary, Inc. did nothing but deliver an automobile and wait for the conversion process to be completed.

The general rule is clear—the one to be charged with the excise tax is the one who performs the act of manufacturing. In this case Memphis performed the conversion. However, as with most general rules, there are exceptions and the regulation provides us with such exception. But to fall within the exception, it must be shown that the requirements thereof have been satisfied. Aided by the interpretation the Eighth Circuit Court of Appeals in the Gamble case, supra, we are satisfied that the Government has not fulfilled its burden in this respect.

At page 375 of 91 F.2d 372 [Gamble case], the court said:

"Taking that view of the evidence in this case which is most favorable to the taxpayer, as we are obliged to do under the circumstances, it appears that the taxpayer never had any intention of manufacturing or producing refrigerators. It intended to buy completed refrigerators from some manufacturer."

We have no doubt that the taxpayer, a mortuary, never had any intention of manufacturing an ambulance or a hearse. It wanted a completed article. For whatever reason it felt controlling, the taxpayer elected the now questioned method of purchasing an ambulance and a hearse. Memphis was responsible for the end product. It performed its work at the request of the taxpayer, but all manufacturers perform this work to satisfy the demands of actual or potential customers. We are convinced that the Peterson Mortuary, Inc., under the circumstances presented to this court in this case, is not a manufacturer liable for an excise tax.

In light of the foregoing, it will not be necessary for us to make a determination as to the amount to which the excise tax should be applied. This question becomes moot under the circumstances.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52 [a] of the Federal Rules of Civil Procedure. Counsel for the plaintiff-taxpayer will prepare and submit an appropriate order of judgment within fifteen [15] days.