Richard P. VINAL and United States of America, Appellants,

v.

PETERSON MORTUARY, INC., Appellee.

No. 18064.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1965.

Robert A. Bernstein, Attorney, Tax Division, Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., and Lee A. Jackson, David O. Walter, Attorneys, Tax Div., Washington, D. C., and Theodore L. Richling, U. S. Atty., and Russel J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., for appellants.

Eugene P. Welch, of Gross, Welch, Vinardi, Kauffman & Schatz, Omaha, Neb., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Richard P. Vinal, District Director of Internal Revenue for Nebraska, and the United States from final judgment of the district court allowing taxpayer Peterson Mortuary, Inc., its claim for refund of excise taxes paid by it and denying the supplemental complaint in intervention filed by the United

States for additional excise taxes arising out of the same transactions involved in the refund suit. The trial court's opinion is reported at 238 F.Supp. 346. Timely claim for refund of the taxes has been made. Jurisdiction exists in the trial court under 28 U.S.C.A. § 1340 and in this court under 28 U.S.C.A. § 1291.

Taxpayer is a Nebraska corporation engaged in the business of conducting funerals. The excise tax controversy arises out of the purchase by the taxpayer of two standard Chrysler automobiles from a local Nebraska dealer, title to each of which was taken in the taxpayer. Immediately after the purchases, taxpayer entered into contracts with Memphis Coach Company of Memphis, Tennessee, for the conversion of one of the automobiles into an ambulance and the other into a hearse. Such contracts called for extensive body changes involving the substitution of practically entirely new bodies. Memphis Coach furnished all the labor and materials needed to effect the conversion for an agreed price of $1870.25 for the ambulance and $4194.00 for the hearse. No manufacturer's excise tax has been paid by or assessed to Memphis Coach in respect to the work here involved. Memphis Coach is no longer in business, having been adjudged a bankrupt.

On July 30, 1962, taxpayer at the urging of the Government filed quarterly excise tax returns covering the foregoing transactions, making payment as follows:

First Quarter 1959  
(ambulance)     Excise Tax..$177.03  
               Interest .... 34.52  
               Penalty .... 44.26  

First Quarter 1960  Excise Tax.. 399.40  
(hearse)          Interest .... 53.92  
               Penalty .... 99.85  

On June 28, 1963, subsequent to the commencement of the refund suit, the Commissioner assessed additional excise taxes and interest on the two transactions here involved in the amount of $434.37. He abated the penalty previously assessed and paid, leaving a balance due, after crediting the penalty, of $290.26.[1] The record does not show the basis upon which such assessment was made.

On September 11, 1964, the Commissioner assessed with respect to the same transactions further excise tax in the amount of $628.49. The basis of the additional assessment is stated as follows:

|  |  |  | Ambulance | Hearse |
|---|---|---|---|---|
| 3. | Total cost | 13,007.25 | 5,370.25 | 7,637.00 |
| 1. | Cost of units converted | 6,943.00 | 3,500.00 | 3,443.00 |
| 2. | Add: Cost of conversion | 6,064.25 | 1,870.25 | 4,194.00 |
| 5. | Total: Constructive price | 14,307.98 | 5,907.28 | 8,400.70 |
| 6. | Federal excise tax, corrected | 1,430.80 | 590.73 | 840.07 |
|  |  | Total | 3/31/59 | 3/31/60 |
| 4. | Add 10% profit | 1,300.73 | 537.03 | 763.70 |

It is the Government's claim that if the tax and interest previously paid is credited and the penalty paid is abated, and additional interest is added, the balance of the excise tax and interest owing is $918.75.

The tax statutes most pertinent to this appeal are §§ 4061 and 4218, I.R.C.1954,

---

[1] This is the amount stated to be claimed by the Government in the district court's opinion. The Government insists the balance due is $918.75. Since the district court held for the taxpayer, it did not reach the issue of additional tax due.

26 U.S.C.A. §§ 4061, and 4218. Section 4061 establishes a manufacturer's excise tax on the sale of automobiles and provides that "a sale of an automobile * * * shall * * * be considered to be a sale of the chassis and of the body." Section 4218 provides that a person who manufactures an article subject to excise tax and uses it himself "shall be liable for tax under this chapter in the same manner as if such article was sold by him."

As properly stated by the trial court, the application of the excise tax statutes to the facts before us raises three basic questions: First, whether the alteration of the original automobiles was an act of manufacture, placing that activity within the purview of §§ 4061 and 4218; second, whether the taxpayer may be characterized as the manufacturer of the ambulance and the hearse in question within the meaning of the excise tax statutes; and third, providing that both preceding questions are answered affirmatively, should the tax levied be computed on the fair market value of a complete hearse and a complete ambulance or only on the additional expenditure for the conversion of each.

■ On the first issue, the trial court concludes:

"In any case, the ambulance and hearse are new and different articles in the eyes of this Court. It is eminently clear to us that there has been an act of manufacturing imposed in this instance." 238 F.Supp. 346, 349.

Such finding is not challenged by either party. In any event, such finding is supported by substantial evidence and not induced by any erroneous view of the law. It is in accord with revenue rulings. See Rev.Rul. 58–32, 1958–1 Cum.Bull. 391; Rev.Rul. 60–81, 1960–1 Cum.Bull. 506; Rev.Rul. 60–155, 1960–1 Cum.Bull. 410. At least one federal district court has adopted the same reasoning. Greyhound Rent-A-Car, Inc. v. United States, N.D.Ill., 63–2 U.S.T.C. 15505. See also United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589; United States

v. Armature Exchange, 9 Cir., 116 F.2d 969; Masao Hirasuna v. McKenney, D. Hawaii, 135 F.Supp. 897, aff'd 9 Cir., 245 F.2d 98.

The basic issue in controversy is whether taxpayer is the manufacturer of the ambulance and hearse within the meaning of the term "manufacture" as used in the excise tax statutes. The Government insists taxpayer is the manufacturer. Taxpayer asserts that the Memphis Coach Company is the manufacturer. The trial court agreed with the taxpayer, concluding:

"We have no doubt that the taxpayer, a mortuary, never had any intention of manufacturing an ambulance or a hearse. It wanted a completed article. For whatever reason it felt controlling, the taxpayer elected the now questioned method of purchasing an ambulance and a hearse. Memphis was responsible for the end product. It performed its work at the request of the taxpayer, but all manufacturers perform this work to satisfy the demands of actual or potential customers. We are convinced that the Peterson Mortuary, Inc., under the circumstances presented to this court in this case, is not a manufacturer liable for an excise tax." 238 F. Supp. 346, 350.

In reaching such decision, the trial court relied upon our decision in United States v. Gamble-Skogmo, Inc., 8 Cir., 91 F.2d 372. We believe that Gamble-Skogmo was properly decided but that it is factually distinguishable from the instant case. In Gamble-Skogmo, a chain store operator contracted with a low bidder, Puffer-Hubbard, for the purchase of a year's supply of electric refrigerators for its retail outfits at a stated price per refrigerator. By reason of a series of unforeseen events, Gamble-Skogmo took a rather substantial financial and supervisory role in the fabrication of the refrigerators. A fact issue arose as to whether Gamble-Skogmo had purchased the freezing units for the refrigerators on its own account. We upheld the trial

court's finding that Gamble-Skogmo did not buy the freezing units for itself. We stated:

> "We think that the inference which the trial court drew from the evidence—namely, that the arrangement between the taxpayer, Puffer-Hubbard, and the Zerozone Corporation amounted to advancing to Puffer-Hubbard a sufficient amount to enable it to carry out its bid— was a permissible inference, and that the evidence did not compel that court to find that the taxpayer bought the freezing units for its own account and became the owner of them and merely employed Puffer-Hubbard to manufacture for it or assemble for it the complete refrigerators. * * *" 91 F.2d 372, 375.

We then observed:

> "If the court below had found that the taxpayer purchased the units from the Zerozone Corporation for its own account, and the cabinets from Puffer-Hubbard, and employed Puffer-Hubbard to assemble the complete refrigerators, the taxpayer would have fallen within the definition of a manufacturer or producer; * * *" 91 F.2d 372, 376.

The statement last quoted is dictum. However, we believe it contains an accurate statement of the law applicable to the factual situation presented in the instant case.

Other cases in this area of the tax law support the propriety of the Gamble-Skogmo dictum as thus applied. In Carbon Steel Co. v. Lewellyn, 251 U.S. 501, 40 S.Ct. 283, 64 L.Ed. 375, taxpayer contracted to supply the British Government with a quantity of high explosive shells. The production of such munitions was an involved process for which taxpayer had neither all the necessary materials nor facilities. Taxpayer subcontracted many of the steps in the production process to other parties, in fact had the better portion of the work done by others. Faced with an excise tax on the sale of the shells, taxpayer alleged

in court that it was not liable for the tax because it was not the manufacturer. The Supreme Court held against taxpayer, stating, "petitioner kept control throughout—never took its hands off, was at pains to express the fact, and retained its ownership of all of the materials furnished by it, and the completed shell belonged to it until delivered to the British government." 251 U.S. 501, 504–505, 40 S.Ct. 283, 284.

More recent cases have found taxpayers' status to be that of a manufacturer where the actual production process is even further removed from taxpayer's immediate control. In two cases, Polaroid Corp. v. United States, 1 Cir., 235 F.2d 276, and Charles Peckat Mfg. Co. v. Jarecki, 7 Cir., 196 F.2d 849, patent owners were found to be manufacturers although the patented item was produced wholly by another party. In Peckat the patentee supplied none of the materials, techniques, or labor that went into the finished product which included its patented item as a very small part. In Polaroid, the entire item produced was patented by taxpayer and taxpayer supplied some specialized tools used in its production, but again the actual fabricator supplied all the necessary materials, labor and supervision.

In both cases the courts found the taxpayer-patentees were manufacturers of the items in question and were liable for the excise taxes thereon. The lack of a proprietary interest in the parties actually engaged in the production process is the touchstone of these decisions. The fabricators were wholly subservient to the patentees. They could not manufacture the products in question for sale to any other parties, nor could they manufacture a number smaller or greater than that dictated by the patentees.

In the cases cited above and others following the proprietary interest test the *sine qua non* to finding that a taxpayer is the manufacturer of an article is the finding of a proprietary interest in the article even before it is completed and delivered. See Allen v. Smith, 173 U.S. 389, 19 S.Ct. 446, 43 L.Ed. 741;

Chandler Laboratories, Inc. v. Smith, E.D.Pa., 88 F.Supp. 583; Record Guild of America, Inc., v. United States, 172 F.Supp. 676, 145 Ct.Cl. 686. This court found that such a prior proprietary interest did not exist in the facts in Gamble-Skogmo, however strong appearances were the other way.

A corollary to the proprietary interest test is the question of whether an actual sale has been made from the fabricator to the taxpayer. It is well settled that the excise tax is "intended to be no more than a comprehensive and convenient mode of reaching all first or initial sales, and * * * it does not reflect a purpose to base the tax in any way on manufacture, production or importation." Indian Motorcycle Co. v. United States, 283 U.S. 570, 574, 51 S.Ct. 601, 603, 75 L.Ed. 1277. Thus, where the fabricator does not sell the completed article to taxpayer, but merely turns it over to him and is reimbursed for the service of fabrication, the taxable event has not yet taken place. In the cases wherein taxpayer is found to have a prior proprietary interest in the article, the fabricator cannot sell it to taxpayer because fabricator does not have an interest which it can pass in a sale. See Polaroid Corp. v. United States, supra, 235 F.2d at p. 278. In Gamble-Skogmo it is noteworthy that the taxpayer was specifically found to be "a purchaser of complete refrigerators from the manufacturer thereof." 91 F.2d 372, 376.

In the instant case, the proprietary interest of Peterson Mortuary in the ambulance and hearse was present from the time the standard passenger automobiles were purchased. It never abated. Memphis Coach Company could not have sold taxpayer the right to use or sell the completed ambulance or hearse because Memphis never had such an interest to give. Such an interest was taxpayer's even before Memphis began work on the conversion of the respective automobiles, as part of taxpayer's prior proprietary interest.

■ The automobiles purchased and owned by the taxpayer at all times here material remained an important and substantial part of the ambulance and the hearse. It seems manifest from the instant factual situation that whatever test is used, prior proprietary interest in the taxpayer or sale by the fabricator, taxpayer must be found to be the manufacturer of the ambulance and the hearse. Hence, taxpayer is liable for the excise taxes due as a result of the additional manufacturing processes here involved. It is not claimed that the excise taxes previously paid by the taxpayer exceed the excise taxes due.

We hold the taxpayer is not entitled to a refund of the excise taxes he here seeks. Taxpayer's complaint must be dismissed.

Since the trial court determined taxpayer was not the manufacturer, it did not reach the issue of what part if any of the additional excise taxes claimed by the Government is due. Section 4218(e) provides that the tax on the manufacturer "shall be computed on the price at which such or similar articles are sold, in the ordinary course of trade, by manufacturers, producers, or importers, thereof, as determined by the Secretary or his delegate."

■■ The determination of fair market value presents a fact issue. Issues of fact should ordinarily be determined by the fact finder, here the trial court.

There is no record evidence with respect to the fair market value of the ambulance or the hearse. The Government's basis of reaching a constructive sales price which it asserts is equivalent to fair market value is hereinabove set out. The computation is based upon the full retail price paid by the taxpayer for the automobiles which figure presumably includes the manufacturer's excise tax on the automobiles paid by Chrysler and passed on to the consumer. It also includes the full contract price of the conversions which, without doubt, includes the full profit of Memphis Coach in the transactions. Additionally a surcharge of 10% profit is added upon all of the foregoing items. We do not believe that upon this record a fact finder would be

compelled to determine as a fact that the ultimate figures presented by the Government represent the fair market value of the hearse and ambulance.

Taxpayer urges that the Government has through the collection of a manufacturer's excise tax on the basic automobiles and by the payment by taxpayer of the excise tax involved in the refund suit received a full excise tax upon the items here in controversy. The Government concedes that a refund may be due on the tax originally paid by Chrysler but urges that since the automobiles were sold through a dealer, the refund is only available to Chrysler under § 6416(b) (2) (E) as amended. The legislative history of the 1958 amendment to such statute, found in H.Rep. No. 481, 85 Cong., 1st Sess., pp. 73–74 (1958–3 Cum.Bull. 372, 444–45), is cited in support of such position. Inasmuch as the sales occurred in 1958 and 1960, it is doubtful whether records would remain available to support a refund claim and the possibility exists that such claim may be barred by 26 U.S.C.A. § 6511(a). Since only two isolated instances of technical manufacture are here involved, we would doubt whether the Government would insist on pressing a claim for double collection of the excise tax on the original automobiles under the circumstances here present. However, we do not pass upon this issue but reserve it for consideration by the trial court upon retrial in event the issue is raised.

Apparently the original tax computation on which the excise taxes were paid was suggested by the Government. The suggested upward revision occurred after the refund suit was commenced. The Government of course has a right to press its demand for the full tax that may be due. Upon an equitable basis, the taxpayer has at least come close to paying all excise taxes that may be reasonably due. We recognize, however, that tax liability is dependent upon statutory provisions and not equitable considerations.

The judgment of the district court allowing the taxpayer's refund claim is reversed. This case is remanded to the trial court with directions to dismiss the taxpayer's complaint and to grant the Government a new trial upon its cross-complaint for additional excise taxes.