**ACE–CHICAGO GREAT DANE CORPORATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–1298.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1983.

Decided Jan. 16, 1984.

Mary L. Fahey, Atty. Tax Div., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Edward C. Rustigan, Mayer, Brown & Platt, Chicago, Ill., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and GORDON, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

The United States appeals from the judgment of the district court holding plaintiff-appellee Ace-Chicago Great Dane Corporation (Ace) not liable for manufacturers' excise taxes on the sale of motor vehicle parts and accessories that were assessed against it and collected for the years 1970 through 1975. The district court ruled that the tax liability should be borne by Ace's customers. The government maintains that the district court erred in finding that Ace's customers were the "manufacturers" under the applicable Treasury Regulation rather than Ace. We agree and thus reverse.

### I.

The underlying facts are not in dispute. Ace is an Illinois corporation with two divisions. The Chicago Great Dane Division acts as a sales agent for a trailer manufacturer. The Ace Trailer Division repairs and services truck trailers, tankers, and fuel trucks. The repairs are usually made because of accident damage or wear and tear, and include the installation of new tops and floors, painting, and lettering. Body work is usually performed on trucks owned by Ace's customers, with Ace providing the materials used in its repair operations, including new body parts, coils of rolled aluminum, wood, and other miscellaneous materials. Occasionally, however, Ace installs cargo equipment and liftgates provided by the customer and performs work on vehicles owned by Ace's sales division, Chicago Great Dane.

During 1976, the Internal Revenue Service (IRS) audited Ace to determine whether the work Ace performed in its repairs division made it liable for manufacturers' excise taxes for the twenty-four calendar quarters in the years 1970 through 1975. The IRS examined nineteen invoices covering work performed during the period January 1, 1975, through March 31, 1975, and concluded that the work covered by sixteen of the invoices involved the manufacture of a part or accessory subject to the eight percent manufacturers' excise tax of section 4061(b)(1) of the Internal Revenue Code of 1954, I.R.C. § 4061(b)(1) (1976), and that the three other invoices represented work constituting the further manufacture of a truck body or chassis subject to the ten percent manufacturers' excise tax of section 4061(a)(1), I.R.C. § 4061(a)(1) (1976). The IRS computed a tax liability for the first quarter of 1975 in the amount of $582 based on these invoices. By agreement of the parties, the IRS used this figure as the amount of tax liability for each of the remaining twenty-three quarters for a total tax liability of $13,968. Ace paid this amount, plus interest. When its refund claims were denied, Ace sued for a refund in the federal district court.

Following the commencement of its action, Ace stipulated that the work described in the nineteen invoices constituted either the further manufacture of a body or chassis, or the manufacture of a part or accessory within the meaning of the applicable

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

Internal Revenue Code sections and that the amount of $13,968 in liability was correct. The work most frequently done in connection with the sixteen invoices subjected to the eight percent tax on parts and accessories was described by the president of Ace as the replacement of truck tops. The replacement activities involved the removal of the old top cover and the installation of a new top cut from rolls of aluminum. The new sheet of aluminum was attached to the bows and top body rails with rivets and trimmed to complete the operation. Other types of work subjected to the eight percent tax for parts and accessories consisted of the replacement of truck floors and the repair of damaged truck and trailer bodies. The president of Ace stated that these repairs involved the replacement and installation of new floors of wood or the replacement of a worn out or damaged trailer piece with a new part. The work pertaining to the other three invoices, taxed as the further manufacture of a motor vehicle chassis or body, involved the installations of one liftgate and two sliding doors.

Because of the stipulation, the only issue for the district court to decide was whether Ace or its customers were liable for the tax. Ace contended that under the Treasury Regulation defining "manufacturer" for purposes of sections 4061(a) and 4061(b),[1] as that regulation has been interpreted by case law and published rulings of the IRS, if the owner of a truck or trailer (the customer) delivers it to a fabricator (such as Ace) who then repairs or modifies the vehicle, the customer and not the fabricator is the "manufacturer" and thus liable for the manufacturers' excise tax so long as title to the vehicle always remains in the customer. The government agreed that the regulation

describes the proper legal test for determining who is the "manufacturer" with respect to the sale of articles taxed under both section 4061(a) and section 4061(b). The government contended, however, that the focus of the test is different with respect to each section. Thus, while the government agreed that Ace's interpretation of the definition of "manufacturer" under the regulation was proper as applied to section 4061(a), which governs excise taxes for the further manufacture of truck *bodies and chassis,* the government argued that the focus of the proprietary interest test under section 4061(b) should be on the *part or accessory* being manufactured. Accordingly, the government asserted that the definition of "manufacturer" as it relates to section 4061(b) requires that for the customer to be considered the "manufacturer," the customer must furnish the raw materials necessary to produce the taxable truck *parts and accessories* at issue and retain a proprietary interest in the furnished materials as well as in the finished *part or accessory;* the customer's proprietary interest in the vehicle was immaterial.

*Applying* the "proprietary interest" test described in the regulation, the district court noted that:

> while it is true that the applicable Treasury Regulation (316.4) includes the phrase " . . . furnishes materials and retains title thereto . . . [,]" the focus of the appellate decisions relied upon by [Ace] is upon the retention of title, and the element of furnishing of materials seems to be relegated to an inconsequential place in the reasoning process. This observation is critical in this case because in the factual situation before the court the customer has retained title to the trailer

---

1. Treasury Regulation § 48.0–2 provides in pertinent part:

    (4)(i) The term "manufacturer" includes any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article or by combining or assembling two or more articles. . . .

    (ii) *Under certain circumstances, as where a person manufactures or produces a taxable*

*article for another person who furnishes materials under an agreement whereby the person who furnished the materials retains title thereto and to the finished article, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer.*

26 C.F.R. § 48.0–2 (1983) (emphasis added).

being worked upon, but in most instances did not furnish the materials.

*Ace-Chicago Great Dane Corporation v. United States,* No. 79 C 4198, slip op. at 7 (N.D.Ill. March 16, 1982). Applying this version of the test, the district court concluded:

Because the customer at all times in the instance of the invoices under discussion here[ ] retained ownership and proprietary interest in the vehicle, and because the activities of [Ace] did not constitute the manufacture for attachment to the vehicle, [Ace] is not liable for the 8% tax in the instance of the sixteen invoices.

The circumstance is different in the instance of the three remaining invoices, where the evidence indicates that ownership of the vehicle was in the plaintiff Ace and the work performed was not repair but rather the attachment of separate articles supplied by the customer to the vehicle. The 10% excise tax in these instances is assessable against and payable by the plaintiff Ace.

**2.** Ace has not cross-appealed from the district court's determination that it is liable for the ten percent excise tax on the further manufacture of chassis and truck bodies represented by the three invoices; the work performed in connection with these invoices was the installation of lift gates or sliding doors on truck trailers, to which Ace held title in the determination of the district court.

**3.** The pertinent part of section 4061(b) and the corresponding Treasury Regulation are set forth below. Section 4061(b) has since been repealed by section 512(a)(2)(B)(2) of the Surface Transportation Assistance Act of 1982, Pub.L. No. 97–424, 96 Stat. 2097, effective on the date of enactment.

§ 4061. Imposition of tax

. . . . .

(b) Parts and accessories.—
(1) Except as provided in paragraph (2), there is hereby imposed upon parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a)(1) [*i.e.,* automobile truck chassis and bodies, and automobile bus chassis and bodies] sold by the manufacturer, producer, or importer a tax equivalent to 8 percent of the price for which so sold. . . .
I.R.C. § 4061(b) (1976).
Treasury Regulation § 48.4061(b)–2.
§ 48.4061(b)–2. Definition of parts or accessories.

*Id.,* slip op. at 9. Accordingly, the court entered judgment for Ace in the amount of $12,309.22, plus interest. It is from this judgment that the government appeals.[2]

## II.

Section 4061(b) of the Internal Revenue Code of 1954, I.R.C. § 4061(b) (1976), imposes an eight percent excise tax on truck parts or accessories "sold by the manufacturer, producer, or importer."[3] Because the parties stipulated that Ace's activities with respect to the sixteen invoices constituted manufacture of a part or accessory, we must decide only whether the district court properly interpreted the applicable regulation in concluding that Ace's customers, rather than Ace, were the "manufacturers" liable for the excise tax. Under the legal test described in 'the regulation, *see supra* note 1, the customer, rather than the fabricator, will be considered the manufacturer of an article if the customer furnishes the component materials and retains a proprietary interest in the component materi-

(a) *In general.* The term "parts or accessories" includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. The term "parts or accessories" includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not fitting operations are required in connection with their installation. . . .

(c)(2) *Articles made for immediate installation or repair.* If in connection with an immediate installation in an automobile truck . . . an article is produced through the use of special machinery or as a result of specialized skills from lengths or rolls of material, the person producing such article is considered to have manufactured an automobile part or accessory and the tax applies to his sale of such part or accessory. . . .
26 C.F.R. § 48.4061(b)–2(a) & (c) (1983).

als and in the finished article. The district court relied on several cases interpreting this regulation to conclude that the requirement that the customer furnish the component materials is secondary and that the central analysis is on whether the customer or the fabricator retained title in the vehicle. In reaching this conclusion, the district court overlooked Ace's stipulation that Ace's work in connection with the sixteen invoices involved the manufacture of motor vehicle *parts and accessories* and *not* the further manufacture of motor vehicle bodies and chassis. We believe it was this failure to focus on the proper object of the proprietary interest that is at the root of the district court's misinterpretation of both the regulation and the applicable case law construing it.

The three cases relied on by the district court for its interpretation of the controlling Treasury Regulation and by Ace in its arguments before us on appeal are *Vinal v. Peterson Mortuary, Inc.,* 353 F.2d 814 (8th Cir.1965), *Boise National Leasing, Inc. v. United States,* 389 F.2d 633 (9th Cir.1968), and *Charles Peckat Manufacturing, Inc. v. Jarecki,* 196 F.2d 849 (7th Cir.1952), *cert. denied,* 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678 (1952). In *Peterson Mortuary,* the taxpayer, Peterson Mortuary, bought two standard Chrysler automobiles and took title to both. Immediately after the purchase, the taxpayer contracted with Memphis Coach Company to have Memphis Coach convert one of the automobiles into an ambulance and the other into a hearse. The conversions resulted in extensive body changes in which Memphis Coach furnished the additional labor and materials. The IRS concluded that these transactions were subject to excise taxes under section 4061($a$) because the conversions resulted in the further manufacture of an automobile *chassis or body.* Thus, unlike the case before us, *Peterson Mortuary* did *not* deal with the manufacture of *parts or accessories;* rather, it involved the *further* manufacture of *chassis and bodies,* so that the focus of the proprietary interest was on the chassis and bodies, which underwent the modifications. The court in *Peterson Mortuary,* after reviewing the case law, concluded that "the *sine qua non* to finding that a taxpayer is the manufacturer of an article is the finding of a proprietary interest in the article even before it is completed and delivered." 353 F.2d at 817 (citations omitted).[4] The court found that "[t]he automobiles purchased and *owned by* the taxpayer [Peterson Mortuary] at all times here material *remained an important and substantial part of the ambulance and the hearse,"* and that consequently Peterson Mortuary was liable for the excise taxes due as a result of the further manufacture of the Chrysler chassis and bodies. *Id.* at 818 (emphasis added). The court properly focused on who held a proprietary interest in the chassis and bodies to determine which party was liable for the excise tax.[5]

---

4. The court in *Peterson Mortuary* emphasized that it was the *control* element that defined the existence of a proprietary interest. In discussing two cases in which the courts found taxpayers who were also patent holders to be the manufacturers of the items in question for purposes of excise taxes, the *Peterson Mortuary* court observed:

> The lack of a proprietary interest in the parties actually engaged in the production process is the touchstone of these decisions. The fabricators were wholly subservient to the patentees. They could not manufacture the products in question for sale to any other parties, nor could they manufacture a number smaller or greater than that dictated by the patentees.

353 F.2d at 817.

For a situation in which a patent holder was held *not* to have control over the production of a motor vehicle part, see *Air Lift Co. v. United States,* 286 F.Supp. 249 (W.D.Mich.1968), *aff'd,* 418 F.2d 558 (6th Cir.1969).

5. That this is the proper focus is supported by Rev.Rul. 69–418, 1969–2 Cum.Bull. 196. Although this ruling is relied on by Ace, it too deals with section 4061(a) and *not* section 4061(b). The ruling involved a beverage distributor that supplied a standard "deck" type truck chassis to a refurbisher that modified the chassis to accommodate the beverage distributor's "drop frame" truck body. The beverage distributor retained title to the truck chassis during the period of modification as well as thereafter. The IRS ruled that, "in view of his retention of the proprietary interest in the chassis, the beverage distributor is the manufacturer of the modified chassis" and subject to liability under section 4061(a). 1969–2 Cum.Bull. at

The *Boise* case also involved section 4061(a), which the IRS applied to a taxpayer who reconstructed six used logging trucks for use in its leasing business. The taxpayer had purchased the used trucks and then had them dismantled and supplied to a reconstruction outfit as the principal components from which the reconstruction took place. Again, the court properly focused on the proprietary interest in the chassis and bodies. It noted that not only did the taxpayer retain title to the used truck components, but that the reconstruction company that performed the work " 'was merely a fabricator who had neither a proprietary interest in the completed vehicles nor right to their sale or use . . . . ' " 389 F.2d at 637 (quoting the district court, 257 F.Supp. 614 at 617 (D.C.Idaho 1966)). Thus, the *Boise* case, like *Peterson Mortuary,* involved the application of the proprietary interest test to a situation distinguishable from the present case, in which the taxable sales involve truck parts or accessories and not the chassis and bodies of the vehicles.

Finally, in the *Charles Peckat* case, we focused on the *control* maintained by the patent holder over the automobile *accessory* being manufactured—a bracket for fastening sun visors to automobiles—to hold the patent holder, and not the fabricator, the "manufacturer" liable for the excise tax.[6] Although in *Charles Peckat* we framed our discussion of who was the manufacturer in terms of who was the initial seller, 196 F.2d at 851, we also observed that the fabricator "never had a proprietary interest in the completed product," namely, the accessory (fastener bracket), *id.* at 852, because the accessory was subject to the patent that the patent holder controlled.

In the present case, the completed items subject to the tax are principally the truck tops and floors fabricated by Ace. The focus of the proprietary interest test, therefore, should be on those items. The district court erred by focusing on who retained a proprietary interest in the vehicles. The district court wrote:

The government's argument depends, to some considerable measure, upon the factual assumption that [Ace], in the instance of the 8% tax assessment, was engaged in the sale of a taxable truck part and that the sale of the part triggered the imposition of the tax. And yet, the factual description of the activities of [Ace] brings to mind more appropriately the concept of repair of trucks rather than fabrication and installation of parts. The replacement of a worn truck floor, the repair of a truck damaged by accident, the rebuilding of a truck roof necessitated by damage to it or excessive wear, does not, in common parlance, constitute the fabrication and attachment or installation of a distinct truck part.

*Ace-Chicago Great Dane Corp. v. United States,* No. 79 C 4198, slip op. at 7–8 (N.D. Ill. March 16, 1982). However, the issue whether or not the work performed in connection with the sixteen invoices constituted the manufacture of a distinct part or accessory was not before the court. Ace had already stipulated, and concedes on appeal, that the work performed was subject to the excise tax on parts and accessories, and we do not question the appropriateness of that conclusion here.[7]

The proper application of the proprietary interest test to this case, therefore, is to focus on who retained control of or title to the component materials and the completed

---

197. *See also* Rev.Rul. 83–149, 1983–40 I.R.B. 8.

**6.** This emphasis on *control* to define the existence of a proprietary interest is also apparent in the *Peterson Mortuary* case. *See supra* note 4. *See also* Rev.Rul. 60–42, 1960–1 Cum.Bull. 474 (a factor in determining whether fabricator or customer is "manufacturer" is who has right to control the production and sale of the article).

**7.** The government maintains that Treasury Regulation § 48.4061(b)–2(c)(2), 26 C.F.R. § 48.4061(b)–2(c)(2) (1983), the case of *Masao Hirasuna v. McKenney,* 245 F.2d 98 (9th Cir. 1957), and Rev.Rul. 76–212, 1976–1 Cum.Bull. 340, provide sufficient support for the position that Ace's installations of the new tops and floors constitute taxable sales of motor vehicle parts or accessories.

truck tops and floors. Under this approach, Ace, and not Ace's customers, is the "manufacturer" under the regulation. Ace's situation is covered by the following statement from *Air Lift Co. v. United States,* 286 F.Supp. 249 (W.D.Mich.1968), *aff'd,* 418 F.2d 558 (6th Cir.1969), a case relied on by the government:

> A manufacturer who buys raw materials, who carries the risk of the purchase of raw materials, who fabricates them according to specifications into a finished product with no further requirement of processing or fabrication, has a *proprietary interest in that product.* When he transfers his proprietary interest to another, be he patentee or otherwise, that is a sale, an arms-length transaction. That is the point at which the tax becomes effective.

*Id.* at 253.[8]

In the present case, the record indicates that Ace, and not its customers, purchased the raw materials, bore the risks associated with the manufacture of the new truck tops and floors, and controlled their production and sale; it was Ace that retained a proprietary interest in the tops and floors until they were installed and the vehicles delivered to the customers. Consequently, because Ace's customers did not furnish the materials necessary to complete the truck tops and floors or retain a proprietary interest in them, we must conclude that Ace was the "manufacturer" subject to the excise tax under the regulation.

The vagueness of the Treasury Regulation causes some difficulty in applying it to the facts in this case. In light of our reading of the regulation, however, we reverse the decision of the district court.

REVERSED.

---

**8.** Although *Air Lift* involved the manufacture of inflatable rubber cylinders designed to fit inside the coil spring of a motor vehicle, a part that has an identity considerably more distinct from the motor vehicle body than the tops and floors manufactured by Ace, an article may be a completed part or accessory notwithstanding that the article is not commonly or commercially known as a part or accessory. *Masao Hirasuna v. McKenney,* 245 F.2d 98, 100–01 (9th

Cir.1957). *See, e.g.,* Rev.Rul. 76–212, 1976–1 Cum.Bull. 340. The analysis given in *Air Lift* is applicable to any situation in which the focus of the proprietary interest is on a motor vehicle part or accessory rather than a body or chassis. Because in this case Ace has conceded that the tops and floors are parts and accessories, then these items, rather than the motor vehicles, are to be the focus of the proprietary interest test.