Lawrence KEASLER and Keasler Body Company, Inc., Appellee,

v.

UNITED STATES of America, Appellant.

No. 84–1904.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1985.

Decided July 3, 1985.

**1228**

John A. Dudeck, Jr., Tax Div., Washington, D.C., for appellant.

Robert B. Branch, Sr., Paragould, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Lawrence Keasler and Keasler Body Company were assessed excise taxes on truck hoist units they had assembled. They prevailed in an action for a refund and after the government's appeal was dismissed, they obtained an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982). The government challenges the award on the grounds that the fee application filed after dismissal of the appeal was untimely, and that its position was substantially justified, even though the only appellate decision in point, one from another circuit, was contrary to its position. We affirm the award of attorney's fees.

Keasler Body was in the business of fitting hydraulic hoists and truck bodies on truck chassis. For the period January 1974 to September 1975, the Internal Revenue Service assessed an excise tax on all the truck-hoist units that Keasler had assembled. The IRS contended that the assembly process constituted taxable manufacturing under I.R.C. § 4061(a)(1). This had been the IRS position since at least 1969. *See* Rev.Rul. 69–195, 1969 C.B. 276. This ruling had, however, been expressly disapproved by the Tenth Circuit in *Jacobs Equipment Co. v. United States*, 574 F.2d 1040 (10th Cir.1978), a case involving facts nearly identical to the case at bar.

Keasler paid the assessment and sought a refund from the IRS. Although the IRS acknowledged that Keasler's position was supported by *Jacobs*, it declined to follow the case and refused the requested refund.[1] In 1979, Keasler sued for a refund and the case was submitted on stipulated facts. The district court[2] granted summary judgment for Keasler on October 2, 1981. The government filed a timely notice of appeal, but later dismissed the appeal on the advice of the Solicitor General. Nine days later (but more than seven months after the grant of summary judgment), Keasler moved the district court for an award of attorneys' fees under section 2412(d)[3] for

---

1. At the time he was audited, Keasler called *Jacobs* to the attention of an Internal Revenue agent. The agent conceded that *Jacobs* "appears to include the same facts" as Keasler's case, yet insisted that Rev.Rul. 69–195 must still be followed. *Keasler v. United States*, 585 F.Supp. 825, 839 (E.D.Ark.1984). In later opposing a motion for summary judgment, the government admitted that *Jacobs* "is directly on point," but maintained that the case was incorrectly decided. *Id.*

2. The Honorable Garnett Thomas Eisele, Chief United States District Judge for the Eastern District of Arkansas.

3. Section 2412(d) expired on October 1, 1984. *See* Pub.L. No. 96–481, § 204(c), 94 Stat. 2321, 2325. Moreover, the award of attorneys' fees in tax cases commenced after April 30, 1983 is governed by Pub.L. No. 97–248, § 292(a), 96 Stat. 324, 572 (codified at I.R.C. § 7430(c)(2)(A)(i) (West Supp.1985)). Because this case was commenced prior to 1983, how-

work before the district court and on the government's short-lived appeal. The government contested the motion on two grounds. First, it argued that Keasler's application was untimely because it was not filed within thirty days of a "final judgment," allegedly the summary judgment granted by the district court. Second, it contended that its position before the district court and on appeal was substantially justified. Keasler was awarded fees for the district court and appellate litigation. *Keasler v. United States*, 585 F.Supp. 825 (E.D.Ark.1984). The government filed this appeal, and basically repeats here the arguments it made before the district court.

## I.

The threshold question is whether Keasler filed a timely application for attorneys' fees incurred during proceedings before the district court. Section 2412(d)(1)(B) requires that an application be submitted to the court "within thirty days of final judgment in the action."[4] The circuit courts have interpreted this phrase in a variety of contexts and several conflicting meanings have emerged.

The most persuasive view originated in *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983). In *McDonald*, summary judgment was entered for the claimant. The government filed a timely notice of appeal but dismissed the appeal six days later. Within thirty days, the claimant moved for attorneys' fees in the district court. The court of appeals held that the motion was

timely. The Seventh Circuit stated that "final judgment," which appears 151 times in the United States Code, does not have a single fixed meaning. *Id.* at 313. Analyzing the practical consequences under the Act, the court concluded that "final judgment" means the completion of all appellate proceedings. *Id.* at 315.

On October 11, 1984, Congress passed a bill amending and extending section 2412(d). It added a definition to the EAJA providing that "'final judgment' means a judgment that is final and not appealable." H.R. 5479, 98th Cong., 2d Sess. § 2(b)(3)(G), 130 Cong.Rec. H11479 (daily ed. Oct. 4, 1984). S.Rep. No. 919, 98th Cong., 2d Sess. 16 (1984), expressly approved the Seventh Circuit's opinion in *McDonald*. The President refused to sign H.R. 5479 and it did not become law. *See Premachandra v. Mitts*, 753 F.2d at 642 n. 9. Nevertheless, the bill influenced the Third Circuit when it decided *Taylor v. United States*, 749 F.2d 171 (3d Cir.1984) (per curiam). In *Taylor*, the claimant prevailed on the merits in the district court and the judgment was affirmed on appeal. Within thirty days of the appellate affirmance, the claimant filed a request for fees with the district court. The Third Circuit held that the application was timely under the following construction: "fee petitions under the EAJA must be filed no later than thirty days after the expiration of the time to appeal, or after the termination of the litigation by the court of last resort, or after a losing party asserts that no further appeal will be taken." *Id.* at 174.[5]

ever, neither of these changes in the law affects the result here. *See generally* Note, *Attorney's Fees in Tax Cases After the Tax Equity and Fiscal Responsibility Act of 1982*, 36 Tax Law. 123 (1982) (chronology of statutory development governing fee awards in tax cases); Note, *Award of Attorney Fees in Tax Litigation*, 19 Val.U.L.Rev. 153 (1984) (same).

4. Keasler's complaint included a prayer for attorneys' fees, but it cannot be seriously contended that this request fulfills the requirement of section 2412(d). First, the prayer does not specifically allege that the position of the United States was not substantially justified. *See Premachandra v. Mitts*, 753 F.2d 635, 642 n. 10 (8th

Cir.1985) (en banc); 28 U.S.C. § 2412(d)(1)(B) (1982). Second, it is doubtful that such an early request could be construed to have been made within thirty days of a final judgment. *But see Taylor v. United States*, 749 F.2d 171, 175 n. 8 (3d Cir.1984) (per curiam) (thirty-day period is only a deadline; earlier filing is possible); *McDonald v. Schweiker*, 726 F.2d 311, 314 (7th Cir.1983) (same) (citing H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4997).

5. This court has rejected the idea that the subsequent proposed amendments and legislative history of the EAJA provide persuasive evidence of

Subsequently, the District of Columbia Circuit adopted the reasoning and holding in *McDonald*. In *Massachusetts Union of Public Housing Tenants, Inc. v. Pierce*, 755 F.2d 177 (D.C.Cir.1985) (per curiam), the court held that EAJA applications must be filed within thirty days of the "time that a judgment becomes final because an appeal is completed or foregone." *Id.* The claimants in *Pierce* had been granted summary judgment on the merits. They filed a motion in the district court for fees more than thirty days after the final judgment had been entered but less than thirty days after the sixty-day period that the government had to appeal. The court held that the application was timely. *Id.* at 179–80.

Most recently, the Sixth Circuit approved *McDonald*. *Feldpausch v. Heckler*, 763 F.2d 229 (6th Cir.1985). Relying also on the legislative history discussed in *Taylor*, the court held that an application for fees is timely if made within thirty days after the expiration of the time to appeal. *Id.* at 232.[6]

Two circuits have taken a different path. In *McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir.1983), the district court dismissed the suit as moot. Nearly three months later, the claimant moved for fees under section 2412(d). Following a brief discussion, which interpreted "final judgment" to mean the same thing under section 2412(d), Fed.R.Civ.P. 54, and 28 U.S.C. § 1291 (1982),[7] the court held that a request for attorneys' fees is untimely if filed more than thirty days after the district court has entered judgment. *Id.* at 1084–85. In dicta, the court rejected the argument that the thirty-day period should commence upon the expiration of the time to appeal or upon termination of the action in the court of last resort.

In *Gold Kist, Inc. v. USDA*, 741 F.2d 344 (11th Cir.1984), the claimant lost in proceedings against the government in the district court. On appeal, judgment was entered for the claimant, and it requested an award of attorneys' fees although no application had been filed with the district court. The court recognized the holding in *McQuiston* that "final judgment" means final in the district court, and agreed with its construction "when the non-governmental party prevails below." *Id.* at 349 (dictum). Nevertheless, it felt that requiring a party losing before the lower court to apply for fees "would be senseless." *Id.* Thus, it concluded that "when the non-government party loses in the district court but prevails on appeal, it must file its application for fees under the EAJA within 30 days of the judgment of the appellate court." *Id.*

The reasoning in *McQuiston* and the dictum in *Goldkist* are too abbreviated to be persuasive. We believe *McDonald* was rightly decided and its acceptance by the other circuit underscores its strength. We also find significant the context in which section 2412(d) appears. Chapter 161, part 6 of the Judicial Code, in addition to containing section 2412, regulates the payment of judgments and compromise settlements by the government. 28 U.S.C. § 2414 (1982) provides that "[w]henever the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same, he shall so certify and the judgment shall be deemed final." Because of its proximity to the statute in question, section 2414 provides one of the best indications of what constitutes a final judgment against the government. Under this definition, the government's dismissal

---

the meaning of the original section 2412. *Premachandra*, 753 F.2d at 641 n. 9.

6. The Second and Tenth Circuits have not confronted the issue. The Fifth Circuit's position is unclear. *Compare Clifton v. Heckler*, 755 F.2d 1138, 1148 & n. 16 (5th Cir.1985), *with Martin v. Heckler*, 754 F.2d 1262, 1263 (5th Cir.1985), *and United States v. 329.73 Acres of Land*, 704 F.2d 800, 809–11 (5th Cir.1983).

7. This reasoning was adopted by the Fourth Circuit in holding that a remand order in a social security case is not a final judgment under section 2412. *Guthrie v. Schweiker*, 718 F.2d 104, 106 (4th Cir.1983). In its context, *Guthrie* sheds little light on the issue here.

of the Keasler appeal is a "final judgment." Considering our preference for relying on the context in which a statute appears in determining its meaning, *see Premachandra*, 753 F.2d at 638, section 2414 is sufficient to support the result here. We hold that the order dismissing the government's appeal is a final judgment under section 2412(d)(1)(B).

## II.

The second issue is whether the district court erred in awarding fees against the government for proceedings at the trial level. First, the government bears the burden of showing that its "position" was substantially justified.[8] *Foley Construction Co. v. United States Army Corps of Engineers*, 716 F.2d 1202, 1204 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). In this circuit, the "position of the United States" includes the government's position at both the prelitigation and litigation stages. *Iowa Express Distribution v. NLRB*, 739 F.2d 1305, 1309 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984). In determining the justification of this position, the question is "essentially one of reasonableness in law and in fact." *Foley*, 716 F.2d at 1204; *see* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984, 4989. A district court's award under section 2412(d) will not be overturned absent an abuse of discretion. *National Treasury Employees Union v. IRS*, 735 F.2d 1277, 1278 (11th Cir.1984); *United States v. First National Bank*, 732 F.2d 1444, 1446–47 (9th Cir.1984).

In determining the reasonableness of the government's position, the legislative history of section 2412(d) is helpful. The House Judiciary Committee stated that the "rea-

sonableness" standard "should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing." H.R.Rep. No. 1418 at 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4990. More specifically, however, the Committee noted that "[c]ertain types of case dispositions may indicate that the government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict * * *. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation." *Id.*, 1980 U.S.Code Cong. & Ad.News at 4889–90. The district court. granted summary judgment for Keasler on the substantive issues in this suit, and this judgment is quite similar to a directed verdict or judgment on the pleadings. *See* 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2713, at 593–95, § 2713.1, at 614–16 (1983). Thus, this case is plainly one that Congress envisioned may justify fees.

### A.

We now explore the substantive justification offered by the government. During the tax periods in question, section 4061(a)(1) imposed an excise tax on manufacturers of truck bodies and chassis. The accompanying Treasury regulation defined "manufacturer" as "any person who produces a taxable article * * * from new or raw material, by processing, manipulating, or changing the form of an article, or by combining or assembling two or more articles." Treas.Reg. § 346.4(a) (1954). In

---

**8.** Section 2412(d)(1)(A) frees the government from the obligation to pay attorneys' fees if "special circumstances make an award unjust." The legislative history indicates that this provision is a " 'safety valve' [which] helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that

often underlie vigorous enforcement efforts." H.R.Rep. No. 1418, *supra* note 4, at 11, 1980 U.S.Code Cong. & Ad.News at 4990. The district court found no special circumstances that would make an award to Keasler unjust. 585 F.Supp. at 841–42. The government has not challenged this finding on appeal.

1969, the IRS determined that combining a hoist with a truck body or chassis constituted manufacturing under the Code. Rev. Rul. 69–195, 1969–1 C.B. 276. In the Tax Reform Act of 1976, however, Congress provided that section 4061(a)(1) was not to apply to resale of an article combined with loading and unloading equipment. I.R.C. § 4063(d) (1982). In commenting on this amendment, the Joint Committee on Taxation opined that under prior law, "persons who obtain bodies or chassis and certain parts or accessories from different manufacturers and combine them are considered further manufacturers." H.R.Rep. No. 1515, 94th Cong., 2d Sess. 497, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 4118, 4200. Based on the 1976 amendments, Rev.Rul. 69–195 was declared obsolete. Rev.Rul. 78–231, 1978–1 C.B. 450.

. The government urges that it was justified in pressing this litigation because: (1) the legislative history and case law of section 4061(a)(1) indicate that the term "manufacturer" should be given a broad construction; (2) Rev.Rul. 69–195 was valid during the years in question and entitled to judicial deference; (3) the taxpayer was independently liable on the theory that it changed the "transportation function" of the vehicle it sold; (4) the legislative history of section 4063(d) indicates post-facto congressional approval of the IRS position.

All of these arguments were either expressly or implicitly rejected by the Tenth Circuit in *Jacobs Equipment Co. v. United States,* 574 F.2d 1040 (10th Cir.1978). On facts virtually identical to those in this case, the court held that attaching a hoist to a truck body did not constitute manufacturing for excise tax purposes. The court specifically declined to follow Rev.Rul. 69–195, noting that it represented only the latest in a series of shifting IRS positions on the subject. *Id.* at 1042; *see* Rev.Rul. 59–62, 1959 C.B. 249, 250. The court also rejected the argument that the comments accompanying the passage of section 4063(d) implied congressional approval of Rev.Rul. 69–195, interpreting them as merely recognizing the existence of the regulation. *Id.*[9] In reaching its conclusion, the Tenth Circuit relied in part on this court's decision in *United States v. Gamble-Skog-Mo., Inc.,* 91 F.2d 372 (8th Cir. 1937), interpreting it to hold that screwing a freezing unit into a cabinet refrigerator is not manufacturing.[10]

■ Thus, the IRS knew that the basis for its lawsuit against Keasler had been undercut by the *Jacobs* decision.[11] It now

---

**9.** The courts are not bound by Congress's interpretation of prior law. *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.,* 497 F.2d 285, 289 (10th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975). If, however, we accepted the government's contention that such congressional comments are persuasive, there is a question whether Rev.Rul. 69–195 was inconsistent with the intent behind section 4061(a)(1). Senator Hansen introduced the amendment that was passed and eventually codified at section 4063(d). He discussed the inequities involved in administering the excise tax and stated that

the most important of them involves the application of the rule of "further manufacture." Under this rule, the distributor who buys a body from one supplier and equipment, such as a hoist, from another supplier is considered to be the manufacturer of a new taxable item when he combines and sells them.

\* \* \* \* \* \*

I feel that this is not the purpose of the statute \* \* \*.

122 Cong.Rec. 19420 (1976) (statement of Senator Hansen). This statement implies that Rev.

Rul. 69–195 was not a correct statement of the law under section 4061(a)(1).

**10.** The IRS declined to seek certiorari in *Jacobs* because section 4063(d) legislatively resolved the issue for the period following October 4, 1976 and because the Tenth Circuit's decision did not create a conflict between the circuits. Action on Decision Memorandum (June 23, 1978).

**11.** *Jacobs* was followed in an unreported decision, *Western Truck Equip. Co. v. United States,* No. 77–501–PHX–WPC (D.Ariz. Nov. 6, 1978). No appeal was taken from this decision because the enactment of section 4063(d) mooted the issue for sales after October 4, 1976 and because the IRS concluded that "the issue for prior periods has minimal importance." Action on Decision Memorandum (June 12, 1979). *Western Truck* also raises concerns that the government's position is not substantially justified. *See Underwood v. Pierce,* 761 F.2d 1342, 1346 (9th Cir.1985).

urges that its decision to proceed below was reasonable nonetheless. The question here does not involve pressing for a de novo evaluation of the propriety of Rev. Rul. 69–195. Nor is there any dispute that *Jacobs* would have been binding precedent had this case been brought in the Tenth Circuit or that *Jacobs* is not strictly controlling in this court. Rather, the issue is whether the IRS could have reasonably believed that this court would not follow *Jacobs*. We conclude that it could not. "This court has long taken the position that uniformity of decision among the circuits is vitally important on issues concerning the administration of the tax laws." *North American Life & Casualty Co. v. Commissioner*, 533 F.2d 1046, 1051 (8th Cir. 1976) (citing *Goodenow v. Commissioner*, 238 F.2d 20, 22 (8th Cir.1956); *Birmingham v. Geer*, 185 F.2d 82, 85 (8th Cir.1950), *cert. denied*, 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686 (1951)). Thus, the tax decisions of other circuits should be followed unless they are "demonstrably erroneous or there appear cogent reasons for rejecting them." *Id.* The court has followed this rule repeatedly. *E.g., United States v. Armature Rewinding Co.*, 124 F.2d 589, 591 (8th Cir. 1942); *Grain Belt Supply Co. v. Commissioner*, 109 F.2d 490, 492 (8th Cir.), *cert. denied*, 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414 (1940). More recently, this court has reemphasized the need for deference to the other circuits: "Although we are not bound by another circuit's decision, we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among our circuits, wherever reasoned analysis will allow." [12] *Aldens, Inc. v. Miller*, 610 F.2d 538, 541 (8th Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). *See generally* Vestal, *Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies*, 55 N.C.L. Rev. 123, 152–58 (1977).[13] This duty applies to the district courts in this circuit.

In ruling on the merits, the district court accepted none of the IRS's contentions and adopted the reasoning and result in *Jacobs*. The court rejected the validity of Rev.Rul. 69–195, interpreting the addition of section 4063(d) as proof that Congress felt the ruling was an erroneous interpretation of section 4061(a)(1). The court also distinguished cases that the government relied upon in urging a broad interpretation of "manufacturing." *Keasler v. United States*, No. J–C–79–175, slip op. at 2–4 (E.D.Ark. Sept. 30, 1981). The district court reconsidered the merits of the government's position when ruling on the attorneys' fees motion. It found that Rev. Rul. 69–195 did not substantially justify the government's position. The court reasoned that revenue regulations deserve little deference, especially following their rejection by a circuit court of appeals. 585 F.Supp. at 838–39; *see Estate of Lang v. Commissioner*, 64 T.C. 404, 407 (1975) (Tax Court dismissed revenue ruling as "simply the contention of one of the parties to the litigation"), *aff'd*, 613 F.2d 770, 776 (9th Cir.1980). Second, the court again distinguished the case law urged by the government in support of its definition of manufacturing. *Id.* at 840.[14]

---

**12.** This rule is not always scrupulously followed. Nevertheless, at least two factors suggest that the government should have expected this circuit would apply the rule to *Jacobs*: the repeated deference paid here to sister circuits in tax cases and the nearly identical facts in *Jacobs*.

**13.** The court's commitment to avoiding intercircuit conflicts in tax cases was reinforced by *United States v. National Bank of Commerce*, 726 F.2d 1292 (8th Cir.1984), *cert. granted*, — U.S. ——, 105 S.Ct. 775, 83 L.Ed.2d 771 (1985). The court declined to rule in favor of the IRS

partly because such a result would have created a conflict with "the only clear appellate precedent in point." *Id.* at 1298–99.

**14.** The position of the IRS is that the test for determining "further manufacture" does not depend on the complexity of the assembly process utilized by the taxpayer. Rather, it contends that the question is whether a "different article" is produced. It is argued that combining hoists, chassis, and bodies produces a different article because the transportation function of the underlying truck is changed. The government concedes that the "transportation function" the-

We conclude that the government was unreasonable in pressing this litigation with the hope that *Jacobs* would be disregarded.[15] Although it argued before the district court that *Jacobs* was erroneously decided, its arguments show only a disagreement with the Tenth Circuit rather than that the court's rationales were demonstrably erroneous.[16] That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable. *See Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed.Cir.1984); *Curry v. Block*, 608 F.Supp. 1407, 1411 (S.D.Ga.1985); *Preston v. Heckler*, 596 F.Supp. 1158, 1160 (D.Alaska 1984); *Nunes-Correia v. Haig*, 543 F.Supp. 812, 820 (D.D.C.1982).

### B.

The government urges that its decision to challenge *Jacobs* here was substantially justified as part of the IRS enforcement scheme. This system was succinctly described in *Divine v. Commissioner*, 500 F.2d 1041, 1049 (2d Cir.1974):

> In federal tax cases disputed questions of law are satisfactorily resolved only by U.S. Supreme Court decisions, for the Commissioner has on many occasions taken the position, as he has in this litigation, that a Court of Appeals decision with which he disagrees has no binding effect on the Service's policies in other circuits.[17]

The Supreme Court will generally grant certiorari in tax cases only when two or

---

ory was argued in *Jacobs* and that the decision implies that the Tenth Circuit rejected it. Similarly, the district court appears to have refuted this argument in concluding that the process did not change the "essential character" of the trucks. Slip op. at 4.

On appeal, the government urges that *Vinal v. Peterson Mortuary*, 353 F.2d 814 (8th Cir.1965), made it reasonable to test the "transportation function" theory in this circuit, *Jacobs* notwithstanding. The taxpayer in *Vinal* had purchased two automobiles and through "a substantial amount of rebuilding" had converted them into a hearse and an ambulance. *Peterson Mortuary v. Vinal*, 238 F.Supp. 346, 347 (D.Neb.1965). The district court concluded that the transformation of these two vehicles was an act of manufacture because a new and different article had been produced. *Id.* at 349. Although neither party challenged this finding on appeal, 353 F.2d at 816, in dicta this court approved this conclusion. The posture of the court's comments and the factual distinctions show that *Vinal* was not a reasonable basis for the IRS to expect this court not to follow *Jacobs,* a case that could hardly be more in point. Moreover, this court had implicitly adopted a "complexity" analysis in *United States v. Gamble-Skog-Mo., Inc.*, 91 F.2d 372, 376 (8th Cir.1937) ("The installing of the units was a trivial operation which we think did not rise to the dignity of manufacturing.") (citation omitted.)

**15.** This case is distinguishable from *Midwest Research Inst. v. United States,* 554 F.Supp. 1379 (W.D.Mo.1983), *aff'd,* 744 F.2d 635 (8th Cir. 1984), which involved the exempt status of research performed by an independent non-profit organization for private sponsors. Both parties agreed that the matter was a "difficult case of first impression." Although the plaintiff prevailed on some issues, the district court declined to find that the IRS position was not substantial-

ly justified. The government's position was deemed a "novel" and credible extension of the law. *Id.* at 1392. In this case, however, the government is seeking to evade precedent squarely opposed to its position. The reiteration of arguments previously rejected by a circuit court of appeals can scarcely be regarded as novel.

**16.** The wisdom of deferring to prior decisions does not suppose that previous adjudications will have been flawless. Rather, the justification is that if an issue is close, a decision that will produce uniformity is preferred so that similarly situated taxpayers are given equal treatment. *See Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting) ("[I]n most matters it is more important that the applicable rule of law be settled than that it be settled right."); Zelenak, *Should Courts Require the Internal Revenue Service to be Consistent?*, 38 Tax L.Rev. 411, 448 (1985) ("A court can, and in fairness should, require the Service to be consistent—even if the result of requiring consistency is to grant a taxpayer a benefit the court does not believe the substantive Code provisions afford him."); Vestal, *supra*, at 175 ("In the case of litigation concerning federal agencies, certainty and uniformity are more to be desired than correctness in the interpretation of applicable statutes.")

**17.** The court held in *Divine* that a decision in one circuit does not collaterally estop the IRS from relitigating a question of law in another circuit. The primary reason for the decision was that such estoppel would foreclose inter-circuit conflicts and thus preclude Supreme Court review of tax issues. The court weighed the "absence of substantial justification for permitting relitigation of either patent validity or is-

more circuits have adopted conflicting positions. *See* 9 J. Mertens, *Law of Federal Income Taxation* § 51.20 (1982); S.Ct.R. 17. Thus, the government contends that it was justified in seeking to establish precedent here to conflict with the *Jacobs* decision.

The government supports this argument with the Supreme Court's recent decision in *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). The Court held that nonmutual offensive collateral estoppel did not apply to preclude the government from relitigating the constitutionality of certain immigration administrative procedures. The Court relied, in part, on the following reasoning:

> A rule allowing nonmutual collateral estoppel against the government * * * would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari. * * * Indeed, if nonmutual collateral estoppel were routinely applied against the government, this Court would have to revise its practice of waiting for a conflict to develop before granting the government's petitions for certiorari.

*Id.* 104 S.Ct. at 572 (citations omitted).

*Mendozo* does not settle the issue here. Prohibiting the government from relitigating an issue is considerably different than penalizing an unsuccessful subsequent effort with attorneys' fees liability. As the court noted in *Trujillo v. Heckler,* 582 F.Supp. 701, 705 (D.Colo.1984): "There is an obvious distinction between the threat of attorneys fees and a rule of nonmutual collateral estoppel. The latter forbids any more litigation while the former merely increases the stakes on the table." *See*

*Spencer v. NLRB,* 712 F.2d 539, 559 (D.C. Cir.1983) ("The government is always free, of course, to seek modification or repudiation of established doctrine, but individual private litigants should not be compelled to subsidize such reevaluations of controlling doctrine."), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Nor can we foresee a substantial chilling effect caused by the possibility of a fee award. "If the issue is important enough, government officials, who of course are not personally liable for the payment of fees, should not be dissuaded by the prospect of an award of fees to a private party's counsel." *Id.* Any chilling effect would be minimal, because attorneys' fees may be paid from the government's judgment fund rather than the offending agency's budget. *See* 28 U.S.C. § 2412(d)(4) (1982); S.Rep. No. 586, 98th Cong., 2d Sess. 20 (1984).

Under the law governing tax cases filed after February 1983, a taxpayer may recover attorneys' fees from the government upon showing, among other things, that "the position of the United States in the civil proceeding was unreasonable." I.R.C. § 7430(c)(2)(A)(i) (West Supp.1985). The government relies on the legislative history of the current statute to validate its position under the EAJA. The Senate Finance Committee has indicated that: "Generally, the pursuit of litigation by the government to establish a conflict among the United States Circuit Courts of Appeals would not be unreasonable." Technical Explanation of Committee Amendment, 127 Cong.Rec. S15577, S15594 (daily ed. Dec. 16, 1981); *see also Contini v. United States,* 1984–2 U.S.Tax.Cas. (CCH) 9969 (N.D.Cal.1984) ("The fact that the IRS explored a legal theory, however obscure, which did not ultimately help the government to win, is not, alone, sufficient to establish unreasonableness [under section 7430].").

---

sues not 'subject to varying appraisals'" against the "formidable policy justifications for sanctioning the Commissioner's relitigation in different circuits of legally identical tax issues, factually differentiable only in the identity of the

taxpayer involved." 500 F.2d at 1048. Here, the issue is not whether the Commissioner should be allowed to relitigate, but who should finance such litigation when the government does not prevail.

The committee's statement does not require that the government prevail here. First, the intent expressed by a Congress subsequent to the enactment of the statute in issue is not probative, much less controlling. *See Premachandra v. Mitts*, 753 F.2d 635, 642 n. 9 (8th Cir.1985) (en banc). Second, the committee's other comments imply that section 7430 and section 2412(d) contain different substantive standards. While the former requires a showing by the taxpayer that the government acted unreasonably, the latter burdens the government with proving that its conduct was substantially justified. Facially, it would seem easier for the government to show that it acted reasonably than to prove a substantial justification. The Committee thus envisioned that the new law would make it more difficult for taxpayers to prevail. 127 Cong.Rec. at S15594; *see* Note, *supra* note 3, at 147–48. A policy of pursuing conflicts among the circuits thus may be reasonable under section 7430, yet lack substantial justification under section 2412(d).[18] Finally, even if pursuing such conflicts may generally be reasonable, the facts of this case show that there is little justification for seeking a conflict regarding the substantive issue.

The appellate review process in tax cases has been significantly criticized. *See* Commission on Revision of the Federal Court Appellate System, *Structure and Internal Procedures: Recommendations for Change*, 67 F.R.D. 195, 349–54, 362–69 (1975) (hereinafter cited as *Hruska Report*); Carrington, *Crowded Dockets and the Courts of Appeals: The Threat to the Function of Review and the National Law*, 82 Harv.L.Rev. 542, 608–09 (1969); Miller, *A Court of Tax Appeals Revisited*, 85 Yale L.J. 228 (1975); Vestal, *supra*, at 124–25; *Divine v. Commissioner*, 500 F.2d at 1049. Because the Supreme Court seldom grants review in tax cases, *see, e.g., Leading Cases of the 1983 Term*, 98 Harv. L.Rev. 87, 312 (1984) (only three full opinions rendered dealing with tax cases), taxpayers in different circuits are treated differently and the goal of uniformity in application of the revenue laws is not often attained. As the district court noted, however, it is not the function of the courts to dictate IRS enforcement policy. 585 F.Supp. at 841 n. 10. Nor are we confronted with the issue of whether the IRS is substantially justified in generally seeking to establish a conflict between the circuits.[19] Under the facts of this case, however, we hold that the IRS was not so justified in seeking a conflict. As noted above, the substantive issue in this litigation has effectively been legislatively mooted for tax periods following 1976. Thus, the IRS has conceded that the resolution of the question lacks "sufficient administrative importance" and that resolving the issue as to prior tax periods has "minimal importance." *See* note 11 *supra*.[20] Most

---

**18.** This reasoning does not conflict with this circuit's use of a "reasonableness" test under section 2412(d). "Reasonable" under section 2412(d), according to the legislative history, may mean something different than under section 7430. *See* S.Rep. No. 586, 98th Cong., 2d Sess. 12–13 (1984); *Reauthorization of Equal Access to Justice Act, Hearing Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary*, 98th Cong., 1st Sess. 17 (1983) (statement of Sen. DeConcini); *id.* at 25–26 (statement of Ass't Attorney General McGrath); *cf. McDonald v. Schweiker*, 726 F.2d at 313 ("Context may disambiguate."). *But see Kaufman v. Egger*, 584 F.Supp. 872, 877 n. 1 (D.Maine 1984) (finding no "dispositive difference" between "unreasonableness" under section 7430 and "not substantially justified" under section 2412), *aff'd on other grounds*, 758 F.2d 1 (1st Cir.1985).

**19.** The government concedes that it "could conceivably be liable for fees for litigating unreasonably an issue in the face of an unbroken string of appellate losses." Appellant's Brief at 36; *see Ashburn v. United States*, 577 F.Supp. 59, 66 (N.D.Ala.1983), *rev'd on other grounds*, 740 F.2d 843 (11th Cir.1984).

**20.** On December 15, 1981, counsel for the IRS recommended that the district court judgment here not be appealed. He stated that the "question of further manufacturing in the factual context of this case is no longer continuing. We would prefer to litigate the further manufacturing issue in a factual context having continuing importance to avoid another *Jacobs Equipment Co.* decision holding that further manufacturing turns on the complexity and time involved in the process." Action on Decision Memorandum (Dec. 15, 1981).

importantly, the government's brief itself derogates the argument that this lawsuit was an important step in creating a meaningful conflict between the circuits. In explaining why the appeal on the merits in this case was dismissed, the government noted that Congress had resolved the issue in the taxpayer's favor for future years and concluded: "A court of appeals' decision in such circumstances would have been of no precedential value and, consequently, there was little point in litigating what was in effect a dead issue." Appellant's Reply Brief at 13.

The purpose of the EAJA was to diminish the deterrent effect that attorneys' fees may have on challenges to unreasonable government action. Pub.L. No. 96–481, § 202, 94 Stat. 2321, 2325 (1980). Congress was concerned that "[i]n far too many cases, a party will knuckle under to a Federal order he knows to be wrong because he cannot afford the cost of taking the matter to court." 125 Cong.Rec. 21441 (1979) (statement of Sen. Thurmond). The IRS's unwillingness to defer to decisions from other circuits may victimize a class of persons intended to benefit from the EAJA:

> So long as the Internal Revenue Service does not feel bound in [a] circuit with the results of cases in one or more other circuits, a small taxpayer * * * will be told * * * that he owed X dollars for some particular item of income. These dollars of course are very small and not significant enough to be contested. This taxpayer normally pays the tax although the government full well knows that it has lost the case in another circuit and in all probability may lose it in every circuit in which it is tried.

*Hruska Report*, 67 F.R.D. at 350; *see id.* at 367 (reflecting concern with "unfairness to 'the small taxpayer who cannot afford

legal counsel' "); *Treasury-Post Office Departments Appropriations for 1957, Hearings Before the Subcomm. on Treasury-Post Office Departments Appropriations of the House Comm. on Appropriations*, 84th Cong., 2d Sess. 462 (1956) (statement of Rep. Murray) (raising question as to why when the IRS "loses an issue in the court of appeals [it] does not promptly conform its administrative and litigation practice, inasmuch as its refusal to do so imposes an unfair burden on small taxpayers who cannot undertake the expense and delay of further litigation"); *cf. Of Course, Inc. v. Commissioner*, 499 F.2d 754, 761 (4th Cir.1974) (Boreman, J., concurring and dissenting) ("Few, if any, taxpayers who are confronted with a pre-existing decision in their particular Circuit which supports the government will be intrepid enough or financially strong enough to carry a case seeking an overruling decision through the Tax Court, through a regular panel, and through the Court of Appeals en banc.").[21] Other factors detract from the relative substantial justification of the IRS's position:

> [W]hen the Commissioner has one full and fair opportunity to press his claim, and loses, the importance of conserving judicial time assumes great weight in subsequent cases raising the same issue. Forcing taxpayers to relitigate leads to a "significant waste of time, expenses, and manpower." Furthermore, inconsistent treatment of identically situated taxpayers reflects adversely on the stability and rationality of the tax system.

Note, *Collateral Estoppel: Loosening the Mutuality Rule in Tax Litigation*, 73 Mich.L.Rev. 604, 619 (1975) (footnotes omitted). We conclude that the government was not substantially justified in bringing the suit against Keasler.[22] *Cf. Spencer v.*

---

21. Keasler spent more than $3,200 in attorneys' fees for proceedings before the district court to recover less than $10,000 in overpaid taxes.

22. The "substantially justified" standard is inherently discretionary and thus can be applied only on a case by case basis. *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387,

1391 (Fed.Cir.1982); S.Rep. No. 586, 98th Cong., 2d Sess. 12 (1984); Note, *Reenacting the Equal Access to Justice Act: A Proposal for Automatic Attorney's Fee Awards*, 94 Yale L.J. 1207, 1213, 1216 (1985). Thus, our holding should not necessarily be read as contrary to decisions declining to award fees to victims of government attempts to secure changes in existing law. *See,*

*NLRB,* 712 F.2d 539, 558 (D.C.Cir.1983) ("[T]he importance of a legal issue may justify a decision by government counsel to 'take a long shot'—for example, to argue on appeal for the overruling of a controlling precedent unfavorable to the United States, even though the likelihood of obtaining such a judgment is slight. * * * [W]hen the government loses such a case, it should be obliged to reimburse the private party for his attorneys' fees.").

Our holding does not limit or discourage efforts to achieve intercircuit conflicts. We simply feel that if the government chooses to embark on such an escapade in a case like this, it should be prepared to pay the piper.[23]

### III.

The final issue is whether the government was substantially justified in appealing the judgment on the merits. Summary judgment was entered for Keasler on October 2, 1981. Pending a review of the case by the Solicitor General, the government filed a notice of appeal on November 30. On December 21, the government dismissed the appeal following the Solicitor General's decision not to pursue it. The district court found that the government's actions on appeal were not substantially

justified: "Just because the Justice Department's internal processes are slow does not exculpate the United States from the consequences of filing frivolous appeals." 585 F.Supp. at 840. The government challenges this conclusion, arguing that the appeal was dismissed as soon as administratively practicable.[24]

The government's arguments are not convincing. First, if the trial position of the government was unreasonable, an appeal based on that position is a fortiori not substantially justified. Second, as noted above, the government has conceded on this appeal that a court of appeals decision on the merits in this case would have served "little point." The government contends, however, that "it was not the intent of the [drafters of the] EAJA to penalize the Government by making it pay attorney's fees where it terminates an otherwise meritorious lawsuit for legitimate reasons." Appellant's Reply Brief at 13–14. This statement is a mischaracterization of the issue. The government is not being penalized for terminating the appeal, but for filing it. Moreover, the suit was not "otherwise meritorious," because the government's position in the district court and pre-trial was not reasonable. Finally, we recognize the channels in which admin-

---

*e.g., Hoang Ha v. Schweiker,* 707 F.2d 1104, 1106 (9th Cir.1983) (dicta); *Wyandotte Sav. Bank v. NLRB,* 682 F.2d 119, 120 (6th Cir.1982); *S & H Riggers & Erectors v. O.S.H.R.C.,* 672 F.2d 426, 430–31 (5th Cir.1982). By the same token, we express no opinion on whether the government is per se unjustified in seeking reversal of precedents or conflicts between the circuits.

**23.** Our holding is not in conflict with *Cornella v. Schweiker,* 741 F.2d 170 (8th Cir.1984) (*Cornella II*). In *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984) (*Cornella I*), the claimant appealed the denial of her application for attorneys' fees under the EAJA, prevailed on most of the legal issues, and was awarded fees. In *Cornella II,* the issue was whether the government's position on appeal in *Cornella I* was substantially justified. The court held that the government had acted reasonably. First, it was observed that prior to *Cornella I* the Secretary had "no guidance from this circuit" in applying the EAJA to Social Security cases. 741 F.2d at 172. Second, the court found it significant that the Secretary had been defending rather than appealing. Fi-

nally, the court stated that "merely because the issues had been decided adversely to the Secretary in other circuits does not necessarily make her position on these same issues in our court unreasonable." *Id.* at 172 n. 3 (citing *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) ).

At least three reasons suggest that *Cornella II* is not controlling here. First, in light of this circuit's strong policy of avoiding conflicts with other circuits in tax cases, it cannot fairly be said that the IRS had "no guidance" as to whether this court would follow *Jacobs.* Second, the IRS was not simply defending its success in a judgment below, as in *Cornella II,* but pursuing Keasler in an attempt to "resurrect its own discredited version of the law." 585 F.Supp. at 839. Finally, the substantive issues in this case lack continuing vitality in light of tax law amendments, which makes further litigation less reasonable than in *Cornella II.*

**24.** The government does not contend that the application for fees in the appellate proceedings was untimely.

istrative decisions in the Department of Justice must flow. Nevertheless, the government has already received special dispensation in this regard through the federal rules. Fed.R.App.P. 4(a)(1) gives the government twice as long as the private litigant to file notice of appeal. If the government cannot make its strategic decisions within this time and a protective notice must be filed and later dismissed, there is no reason that the private litigant should be forced to pay attorneys' fees for a meaningless appeal. We conclude, therefore, that the government's appeal was not substantially justified.

The judgment of the district court is affirmed.

A true copy.