Caleb J. **TRUAX**, Appellant,

v.

Otis R. **BOWEN**, Secretary of Health and Human Services of the United States, Appellee.

No. 87–5047.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1988.

Decided March 18, 1988.

---

Mark E. Todd, St. Paul, Minn., for appellant.

Lynn A. Zenter, Minneapolis, Minn., and Ted K. Yasuda, Chicago, Ill., for appellee.

Before HEANEY, WOLLMAN and MAGILL, Circuit Judges.

PER CURIAM.

Caleb Truax appeals the United States Magistrate's [1] order denying his motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). For the reasons discussed below, we affirm.

Truax was awarded disability insurance benefits commencing on April 13, 1979, following a heart attack. The Secretary of Health and Human Services (Secretary) reviewed Truax's case in 1982, and on October 1, 1982, notified Truax that evidence in his file indicated that he had become able to engage in substantial gainful activity and that his benefits would accordingly terminate in December 1982. After this decision was sustained at all levels of administrative review, Truax commenced the present action in district court appealing the termination of benefits.

After reviewing the merits of Truax's claim, the district court "was ready to rule in [Truax's] favor," however, before the court did so, Congress passed the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794, which required that disability-termination cases pending as of September 19, 1984, be remanded to the Secretary for a reevaluation using the newly codified medical-improvement standards. Upon remand, the Secretary applied the new standards, reinstated Truax's benefits and awarded approximately $14,000 in back-benefits; judgment was accordingly entered in favor of Truax in the district court.

Truax thereafter filed a timely motion for attorney's fees and costs, in the sum of $2,103.75, under the EAJA; Truax's counsel filed for fees in the amount of $2,043.75, under the Social Security Act, 42 U.S.C. § 406(b). The magistrate awarded attorney's fees to Truax's counsel to be paid out of Truax's back benefits under section 406(b). He denied attorney's fees under the EAJA, concluding that because Truax's benefits were reinstated due to the Secretary's own volition, Truax was not a "prevailing party" as required for an award under the EAJA. The magistrate

1. The Honorable Bernard P. Becker, United States Magistrate for the District of Minnesota.

further concluded that the Secretary's position in terminating Truax's benefits was "substantially justified" in light of the turmoil which existed in the state of the law regarding disability-termination standards. The magistrate also noted that Truax failed to file an itemized statement required by the EAJA, 28 U.S.C. § 2412(d)(1)(B). This appeal followed.

■ The EAJA authorizes an award of attorney's fees to a prevailing party unless the position of the government was substantially justified, or unless special circumstances exist which make an award of fees unjust. 28 U.S.C. § 2412(d)(1)(A). This court reviews the denial of an EAJA award under an abuse-of-discretion standard. *Gamber v. Bowen*, 823 F.2d 242, 244 (8th Cir.1987).

Truax argues that, even though his court action was mooted prior to a decision on the merits, he is a "prevailing party" because (1) had he not filed his federal suit, he would have lost his right to recover back benefits and (2) his suit, along with others, acted as a catalyst in causing Congress to enact the new termination standards.

■ The EAJA does not define "prevailing party." In the context of other fee-shifting statutes,[2] this court has held that a party may be considered a "prevailing party" where remedial action on the part of the defendant moots the lawsuit before trial, if the party's lawsuit was a "catalyst" that brought about or prompted the defendant's remedial action. *See Williams v. Miller*, 620 F.2d 199, 202 (8th Cir.1980) (per curiam) (class action; attorney's fees under 20 U.S.C. § 1617 and 42 U.S.C. § 1988); *United Handicapped Fed'n v. Andre*, 622 F.2d 342, 346–47 (8th Cir.1980) (class action; attorney's fees under 29 U.S.C. § 794a(b)).

■ In the present case, however, even granting that Congress' enactment of the Reform Act was partly a result of the

thousands of suits filed by terminated claimants against the Secretary, *see Stone v. Heckler*, 658 F.Supp. 670, 674–75 (S.D.Ill. 1987), we believe that the causal link between Truax's individual lawsuit and Congress's action is too tenuous to satisfy the catalyst test. Moreover, although it is true that had Truax not filed his lawsuit he would not have obtained relief, we fail to see how this "but for" argument establishes a causal connection between the litigation and the Secretary's remedial action.

In factually similar circumstances other courts have concluded, as the magistrate did here, that the plaintiff was not a "prevailing party." *See, e.g., Mathus v. Heckler*, 661 F.Supp. 241 (N.D.Ill.1987).

We are mindful that other courts have adopted the catalyst approach and awarded EAJA fees in cases similar to the present one. *See Vitale v. Secretary of HHS*, 673 F.Supp. 1171 (N.D.N.Y.1987); *Stone v. Heckler*, 658 F.Supp. at 671–75. *See also Hyatt v. Heckler*, 807 F.2d 376, 382 (4th Cir.1986) (class action). In light of the tenuous causal link between Truax's suit and the Secretary's remedial actions, however, we cannot conclude that the magistrate abused his discretion in concluding that Truax was not a "prevailing party" under the EAJA.

Accordingly, although we fully agree with the dissent that in the present case the Secretary's position was not "substantially justified," *infra* p. 1001, we affirm the judgment below.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. I believe Truax clearly was a prevailing party under the EAJA and the relevant precedent in this Circuit.

My disagreement with the majority stems from its narrow interpretation of the term "catalyst." Courts have considered a suit the "catalyst" (and hence the party bringing the suit prevailing) if there is a causal connection between the bringing of

---

**2.** It is clear from the legislative history of the EAJA that the interpretation of "prevailing party" is to be consistent with the law developed under other fee-shifting statutes. *McGill v. Sec-* *retary of HHS*, 712 F.2d 28, 30–31 (2d Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

the suit and the granting of relief. It is not, however, "necessary for the plaintiff's lawsuit to be the sole cause or even the primary cause of the defendant's decision to settle." *United Handicapped Fed'n. v. Andre*, 622 F.2d 342, 346–47 (8th Cir.1980) (construing 42 U.S.C. § 1988).

The majority ignores the undeniable fact that Truax's lawsuit was necessary for him to receive the benefits sought and thus was a "catalyst."[1] If Truax had not had a pending appeal from the Secretary's final termination decision, that decision would have acted as a *res judicata* bar to any claim of disability before the date of that decision. *See, e.g., Bullyan v. Heckler*, 787 F.2d 417, 420 (8th Cir.1986). Clearly, a "but for" causal relationship is present— "but for" Truax's suit, the Secretary could not have awarded him back-benefits. There is no clearer causal link than that.[2]

The majority cites *Mathus v. Heckler*, 661 F.Supp. 241 (N.D.Ill.1987), a case which addresses the effect of a remand under the 1984 Reform Act on attorney's fees claims under the EAJA. In this case, benefits were reinstated after remand, but attorney's fees were denied under the EAJA. The *Mathus* court reasoned that "it was an amendment to the Social Security Act, and not the filing of the suit, which led to the reinstatement of plaintiff's benefits." *Id.* at 242.

This statement of the *Mathus* court, however, ignores the thrust of a claimant's suit when his or her benefits are terminat-

ed. A claimant whose benefits have been terminated seeks more than a reinstatement of benefits. He or she also usually seeks payment for back-benefits denied as of the date of the termination. To obtain back-benefits a claimant must have a live claim before an agency or the courts; otherwise, the 1984 Reform Act would not help the claimant. Thus, in this case, had Truax simply acquiesced in the Secretary's denial of benefits, he would not have been entitled to the back-benefits he sought.

The Secretary analogizes this case with *Swedberg v. Bowen*, 804 F.2d 432 (8th Cir. 1986). That case, in combination with this one, nicely draws the proper line between prevailing and non-prevailing parties. In *Swedberg*, this Court held that the claimant was not entitled to attorney's fees because he "never received benefits for the period originally appealed from," but received them on remand because a change in his age made him eligible for benefits. This Court concluded that "[i]t would be anomalous to find appellee to be a prevailing party in these circumstances when his ultimate receipt of benefits was due to the intervening event of his sixtieth birthday." *Id.* at 434.

*Swedberg* is entirely consistent with this dissent. In *Swedberg* the claimant's suit had no effect on the relief eventually gained. Swedberg never received the benefits for the period sought. The intervening event, his birthday, caused Swedberg to

---

1. Because I would uphold Truax's first catalyst theory, I do not address his second one—that his suit, along with the thousands of other claims regarding the medical-improvement standard, convinced Congress to pass the 1984 Reform Act, thereby making Truax's suit a cause, albeit distant, of the relief eventually granted. This theory, however, has been accepted. *See Stone v. Heckler*, 658 F.Supp. 670, 674 (S.D.Ill. 1987).

2. One court, which ultimately found the claimant to have "prevailed," has said this argument "proves too much." *Sherman v. Bowen*, 647 F.Supp. 700, 702 (D.Me.1986). According to the *Sherman* court, under this argument:

> every claimant would be entitled to an EAJA attorney fee award so long as he was determined eligible for disability benefits while his suit remained pending, *whether or not his right to benefits had anything to do with the litigating position taken in his suit.* Quite obviously, the policy of EAJA would be ill served by promoting litigation without regard to whether the challenged governmental action was reasonable or unreasonable.

This observation, however, overlooks the fact that there are two elements necessary to recover attorney's fees under the EAJA. The reasonability of the governmental action is irrelevant to the prevailing party element. The reasonability of the government's action should only be addressed in determining whether the government's action was "substantially justified." In addressing this element, it could be determined that, for example, given the unreasonable nature of the claimant's litigating position, the government was reasonable in defending it. *See infra* section B. Thus, my position is perfectly consistent with the purpose of the EAJA.

become entitled to benefits. Swedberg's lawsuit had nothing to do with the entitlement. In contrast, this suit was necessary before Truax could be entitled to the back benefits he sought. Thus, unlike the claimant in *Swedberg*, Truax received benefits "for the period originally appealed from."

Truax's suit, therefore, was required in order for him to receive back-benefits. It was not the sole cause—the 1984 Reform Act may have made it easier—but the law does not require a suit to be the sole cause of a claimant's success before a claimant can be considered a prevailing party. For this reason, I dissent.

SUBSTANTIALLY JUSTIFIED.

Because I would find that Truax was a "prevailing party," I must address the question whether the Secretary's position in this lawsuit was substantially justified. Although the majority agrees with my reasoning on this issue, it does not have to reach it, since it held against Truax on the first issue.

The Secretary can prevent an award of attorney's fees by establishing that his position in the suit was "substantially justified." Section 2412(d)(1)(A). To carry this burden, the Secretary must show that his position was "clearly reasonable, well founded in law and fact, solid though not necessarily correct." *United States v. Estridge*, 797 F.2d 1454, 1459 (8th Cir.1986).

In this case one must analyze the state of the law as it existed prior to the 1984 Reform Act because the Secretary clearly could not be expected to implement that legislation before it was enacted.[3]

The Secretary concedes that *Rush v. Secretary of Health and Human Services*, 738 F.2d 909 (8th Cir.1984), ultimately "laid to rest" the question of the proper standard for review and termination of benefits (although the 1984 amendments subsequently altered that standard). This Court decided *Rush* on June 27, 1984, about two months after Truax filed in the district court. The district court remanded the suit under the 1984 Reform Act in January of 1985.

There is no problem in awarding Truax benefits for legal work done *after* the *Rush* decision. Once Rush was decided, the Secretary had no justification for continuing to contest Truax's right to benefits before the district court, yet he continued to do so.

Attorney's fees for the time before the date of the *Rush* decision are a more difficult matter. The *Rush* opinion states that "[w]e recognize that we are enunciating our presumption rule for the first time in this case." *Id.* at 916. The Secretary contends that "because the *Rush* standard was clearly new, was not required by earlier

**3.** Similarly, however, the courts could not be expected to abide by that legislation before it was passed. Thus, even though the law on the medical improvements standard may have been altered by the 1984 Reform Act, we cannot agree with the magistrate's statement that this legislation showed "turmoil in the state of the law." If anything, that turmoil was due to the Secretary's failure to follow clear precedent.

As stated in the House Report on 1984 Reform Act, H.R.Rep. No. 618, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3039–3040:

The overall purpose of the bill is, first, to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government. Second, the bill is intended to provide a more humane and understandable application and appeal process for disability applicants and beneficiaries appealing termination of their benefits. Finally, the bill seeks to standardize the Social Security Administration's policy-making procedures through the notice and comment procedures of the Administrative Procedures Act, *and to make those procedures conform with the standard practices of Federal law, through acquiescence in Federal Court of Appeals rulings.*

The committee is deeply concerned about the erosion of public faith and confidence in the social security disability programs, and in the agency as part of the Federal government, that has occurred as a result of the changes in policies over the last several years. The guidelines established in this bill appear to the committee to be the best way to restore confidence in the program. The committee believes it is crucial to continued public support for the social security program as a whole for the public to understand that the program will be administered according to the law rather than by constantly shifting and possibly arbitrary policies.

(quoted in *Stone v. Heckler*, 658 F.Supp. 670 at 673 n. 3 (S.D.Ill.1987)).

Circuit precedent, and was decided only several months *after* [Truax] had filed his action in the district court, the Secretary's failure to follow the *Rush* standard can scarcely justify a fee award under EAJA."

The Secretary's argument ignores a number of reasons why the Secretary should have followed the *Rush* rule even before *Rush* was decided. First, as we stated in *Keasler v. United States*, 766 F.2d 1227 (8th Cir.1985), "[t]hat a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable." *Id.* at 1234 (citations omitted).

Second, decisions in this Circuit before *Rush* presaged the outcome in *Rush*. As we said in *Rush*, 738 F.2d at 912, "[w]e implicitly rejected the Secretary's position [on the medical-improvement standard] in *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984)." Although we recognized in *Rush* this implicit rejection was dictum, this dictum certainly gave the Secretary an indication of how the Eighth Circuit would decide the case once directly confronted with it. In addition, a district court in Minnesota had decided a similar case in the claimant's favor on April 27, 1984. *See Polaski v. Heckler*, 585 F.Supp. 1004, 1011–1013, 1016, 1018–1019 (D.Minn.), *dismissed*, 751 F.2d 943 (8th Cir.1984), *vacated and remanded on other grounds*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *reinstated*, 804 F.2d 456 (1986), *cert denied*, —— U.S. ——, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

Third, in *Rush* we noted that the regulations governing terminations "simply do not say what the Secretary says they mean. They do not even come close to saying that a prior determination of disability may be disregarded without any new evidence." 738 F.2d at 914. This language strongly indicates that the Secretary's interpretation of its regulations was simply not a tenable one.

Fourth, we noted in *Rush* that a number of other Circuits had rejected the Secretary's position on the medical-improvements standard. *Id.* at 914–15 (citing *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982); *Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir.1983); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir.1982)).[4] We pointed out that the Third Circuit in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983), had taken only a "slightly different approach" by requiring the claimant first to submit evidence that his or her position is unchanged before the burden of production shifts to the Secretary. 738 F.2d at 915.

The Secretary in this case has come forward with no cases which took his position on the medical-improvement standard. We had a duty in *Rush* to follow the decisions from other circuits which rejected the Secretary's position "wherever reasoned analysis will allow." *Keasler*, 766 F.2d at 1233. And we have awarded attorney's fees under the EAJA where the federal government has failed to follow reasoned extra-circuit precedent. *Id.*[5]

---

**4.** *See also Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996 (1st Cir.1975); *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir. 1981); *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir.1981). Justice Rehnquist's comments in *Heckler v. Lopez*, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983), are also of interest. *Lopez* involved a stay application by the Secretary to lift an injunction issued by a district court requiring reinstatement of terminated benefits to claimants who applied for reinstatement and who believed their medical condition had not improved. Justice Rehnquist granted the stay primarily on the ground that some of the claimants had not exhausted their administrative remedies. In analyzing the merits of the medical improvement claim, however, the Circuit Justice stated:

"I ... assume that since there does not appear to be any significant circuit conflict on this point at present, four Justices of this Court would not be likely to grant a petition for certiorari should the Secretary seek review in this Court of the merits of a Ninth Circuit opinion reaffirming Patti and Finnegan." *Id.* 463 U.S. at 1331, 104 S.Ct. at 12.

**5.** In *Keasler* we also distinguished the right of the Secretary to relitigate an issue in different circuits from a finding that the Secretary is not "substantially justified" for relitigating an issue in different circuits: "There is an obvious distinction between the threat of attorneys fees and a rule of nonmutual collateral estoppel. The latter forbids any more litigation while the former merely increases the stakes on the table." *Id.* at 1235 (quoting *Trujillo v. Heckler*, 582 F.Supp. 701, 705 (D.Colo.1984).

The Secretary relies primarily on one case which reached an outcome different from the one I would reach here. In *Trujillo v. Heckler*, 582 F.Supp. 701 (D.Colo. 1984), the district court held that the Secretary was substantially justified in litigating cases which were eventually remanded by the 1984 Reform Act.

The present case is distinguishable from *Trujillo*. Although the *Trujillo* court points to the unanimity among the circuits on the medical-improvement rule, it also observes that district court decisions in its circuit "were less than unanimous" on the medical-improvement issue. *Id.* at 706; *accord Martinez v. Secretary of Health and Human Services*, 815 F.2d 1381, 1383 (10th Cir.1987). The *Trujillo* court also minimizes the significance of the extra-circuit precedent by relying heavily on the "special position the government occupies as a litigant in this country." *Id.* Our Court, however, has largely rejected that argument as an impediment to an award of attorney's fees under the EAJA. "If the issue is important enough, government officials, who of course are not personally liable for the payment of fees, should not be dissuaded by the prospect of an award of fees to a private party's counsel." *Keasler*, 766 F.2d at 1235 (quoting *Spencer v. NLRB*, 712 F.2d 539, 559 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984)).

Finally, the *Trujillo* court cited Congress' failure to include a medical-improvements standard in the 1983 amendments to the Social Security Act as evidence of the reasonableness of the Secretary's position. As that court's own review of the legislative history of the 1983 amendments shows, however, Congress' failure to take action may have in part been due to insufficient time and insufficient understanding of the issue. *See Trujillo v. Heckler*, 569 F.Supp. 631, 633–34 (D.Colo.1983) (*Trujillo* I). Moreover, to the extent that the debate about the 1983 amendments can be viewed as an interpretation of prior law, we are not bound by it. *See Keasler*, 766 F.2d at 1232 n. 9 (citing *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.*, 497 F.2d 285, 298 (10th Cir.1974), *cert. denied*,

419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975)). Therefore, *Trujillo* is not controlling in this case.

Our decision in *Rush* was preceded by well-reasoned decisions in this Circuit which impliedly, and decisions in other Circuits which explicitly, rejected the Secretary's position on the medical-improvement standard. I, therefore, would hold that the district court abused its discretion in holding that the Secretary's position was substantially justified.

CONCLUSION.

If the Secretary were to take a sound position in opposition to a claim for benefits and intervening legislation made that position untenable, the government clearly would not be liable for attorney's fees for legal work done prior to the enactment of the legislation. On the other hand, where the Secretary's position is not reasonably sound under the law, I do not believe the mooting of that lawsuit by subsequent legislation or otherwise should prevent the claimant from recovering attorney's fees, particularly if it is shown that that lawsuit was necessary in order to achieve the outcome sought. That is the case here.

Therefore, I would award Truax attorney's fees of $2,103.75 under 28 U.S.C. § 2412.